1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BLACK LIVES MATTER-STOCKTON          No.  2:18-cv-00591-KJM-AC
     CHAPTER, et al.,
12
                    Plaintiffs,
13                                         ORDER
            v.
14
     SAN JOAQUIN COUNTY SHERIFF'S
15   OFFICE, et al.,

16                  Defendants.

17

18

19              Black Lives Matter-Stockton ("BLM") and its president bring this putative civil

20   rights action against San Joaquin County and several individual county sheriffs.  Defendants

21   move to dismiss the complaint.  Mot., ECF No. 4.  Plaintiffs oppose.  Opp'n, ECF No. 6.

22   Defendants filed a reply.  Reply, ECF No. 7.  The court held a hearing on May 18, 2018.

23   Temitayo Peters appeared for defendants; no one appeared for plaintiffs.[1]  As explained below,

24   the court GRANTS defendants' motion and DISMISSES the complaint, with leave to amend.

25   ////

26   ////

27   ───────────────────────
            [1] The court issued an order to show cause following hearing, and plaintiffs' counsel
28   responded.  ECF Nos.  13-14.  The Order to Show Cause is DISCHARGED.

                                        1

I.    BACKGROUND

In early 2017, five BLM members were arrested on state criminal misdemeanor charges of assaulting officers and resisting arrest at a BLM protest. Compl., ECF No. 1, ¶ 17. The five BLM defendants plus many other BLM members tried to attend two hearings at the County courthouse, but allegedly were excluded and harassed by law enforcement. Specifically, on October 30, 2017, San Joaquin County Superior Court Judge Garber heard oral argument on the BLM members' discovery motion in the state criminal case. The motion was aimed at recusing the District Attorney's office for racial bias. *Id.* ¶¶ 17-18. Before the hearing, county sheriffs "formed a line across the front of [the] courthouse . . . , blocking all entrance access" and allegedly admitted only persons who are white, but questioned and denied access to persons who are black generally and BLM members specifically. *Id.* ¶¶ 18-19. On January 29, 2018, after oral argument on another related motion following which Judge Garber ruled against the BLM members, a group of sheriffs allegedly followed, insulted, harassed and intimidated BLM members inside the courthouse, implying BLM members were not welcome and would be subjected to violence and arrest if they did not leave. *Id.* ¶ 21.

BLM and its president Dionne Smith-Downs sue the County and several individual sheriffs for violating their state and federal civil rights. Plaintiffs allege violations of three federal constitutional rights under 42 U.S.C. § 1983[2]: The First Amendment right to free speech and association (Claim 1); the Sixth Amendment right to a public trial (Claim 2); and the Fourteenth Amendment right to equal protection (Claim 3). *Id.* ¶¶ 37-42. They also assert two state civil rights claims under the Unruh Act, California Civil Code § 51.7 (Claim 4), and the Bane Act, California Civil Code § 52.1 (Claim 5). *Id.* ¶¶ 43-46. Finally, they bring a negligence claim (Claim 6). *Id.* ¶¶ 47-49. All claims are pled against all defendants, without differentiation.

////

---

[2] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

II.     LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court may grant the motion only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), though it need not include "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. Conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). In a Rule 12(b)(6) analysis, the court must accept well-pled factual allegations as true and construe the complaint in plaintiff's favor. *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

If a plaintiff requests leave to amend a claim subject to dismissal, the federal rules mandate that leave "be freely given when justice so requires." Fed. R. Civ. P. 15(a). Before granting leave, a court considers any potential bad faith, delay, or futility regarding the proposed amendment, and the potential prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Smith v. Pac. Prop. Dev. Co.*, 358 F.3d 1097, 1101 (9th Cir. 2004).

III.    FEDERAL CLAIMS

A. First Amendment - § 1983 (Claim 1)

Plaintiffs allege all defendants violated their First Amendment rights to freedom of speech and association. Compl. ¶¶ 37-38.

The First Amendment's free speech protections encompass the freedom to engage in "expressive association," which protects a group's right to gather for a particular expressive purpose, such as a protest or parade. *Hurley v. Irish-Am. Gay*, 515 U.S. 557, 569 (1995); *cf. Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) (explaining a group's coming together for a different associational purpose, like dancing, does not "involve the sort of expressive association that the First Amendment has been held to protect").

////

3

1     Here, although BLM is an organized group, plaintiffs have not pled that BLM

2     came together on either date in 2017 or 2018 at issue to express a collective point.  *See generally*

3     Compl.  Rather, plaintiffs come close to pleading the opposite: They allege BLM members were

4     merely "walking toward the courthouse and seeking entry, in the same manner as every other

5     individual who approached the building."  *Id.* ¶ 20.  In opposition to defendants' motion,

6     plaintiffs argue they went to the courthouse to "provide organized support at the hearings and

7     trials of Black Lives Matters [sic] members who had been arrested."  Opp'n at 8-9.  But this

8     language is not in the complaint, and even if it were, organized support is not the same as

9     expressing a "collective point."  *See Stanglin*, 490 U.S. at 25.

10     This claim is DISMISSED, but with leave to amend if amendment can be

11     accomplished while complying with Federal Rule of Civil Procedure 11.

12          B.   Sixth Amendment - § 1983 (Claim 2)

13     Plaintiffs claim defendants collectively denied plaintiffs' Sixth Amendment right

14     to a public trial, a right shared by the accused and the public.  Compl. ¶¶ 39-40.  Plaintiffs lack

15     standing to bring this claim, as pled.

16     BLM President Smith-Downs has not established individual standing.  To

17     establish standing, Smith-Downs must plead facts showing (1) an injury in fact; (2) a causal link

18     between defendants' conduct and the claimed injury; and (3) redressability.  *Lujan v. Defenders*

19     *of Wildlife*, 504 U.S. 555, 560 (1992).  The alleged injury must be concrete, not abstract or

20     hypothetical.  *Id.*  Although the complaint states that sheriffs "physically prevented [Smith-

21     Downs] . . . from entering the courthouse and . . . from attending a court hearing . . ." Compl. ¶ 4,

22     the alleged injury to Smith-Downs is unclear.  Was she one of the BLM defendants or merely a

23     spectator?  Was she temporarily or permanently denied courthouse access?  Was she there only

24     on October 30, or on January 29 as well?  This claim is DISMISSED as pled by Smith-Downs,

25     with leave to amend to clarify the extent of her involvement and injury, if she can.

26     BLM also lacks associational standing.  To assert claims on behalf of its members,

27     BLM must plead facts showing (1) its members "would otherwise have standing to sue in their

28     own right"; (2) the interests BLM seeks to protect are "germane to the organization's purpose";

and (3) individual members' participation in the lawsuit is not required. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). BLM has plausibly pled (1) but not (2). Plaintiffs allege several sheriffs denied courthouse access to BLM members who were named defendants in the cases being heard that day. Compl. ¶ 19. This satisfies the first prong, standing. But it is unclear that protecting a defendant's right to a public trial is germane to BLM's stated purpose, which is primarily to "address police violence against black and brown people, including the shooting and killing of unarmed black and brown civilians." *Id.* ¶ 8. This claim is DISMISSED as pled by BLM, with leave to address this deficiency.

### C. Fourteenth Amendment Equal Protection - § 1983 (Claim 3)

Plaintiffs allege defendants violated their rights to equal protection under the Fourteenth Amendment. *Id.* ¶¶ 41-42. To survive dismissal, plaintiffs must plausibly allege that a defendant "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

Here, plaintiffs allege that on October 30 "[i]ndividuals who appeared to be Black or non-white were examined and questioned, and those whom the Sheriff's deputies determined to be Black, or members of Black Lives Matter were summarily denied access." Compl. ¶ 19.

As pled, this claim cannot survive dismissal. First, it is unclear if the equal protection allegations pertain only to the October 30 incident, or to the January 29 incident as well. Second, plaintiffs have not directly alleged that any defendant intentionally or purposefully discriminated against BLM members based on their race. *See generally* Compl. Here, plaintiffs' pleading could be construed as suggesting race was not a factor: They allege Judge Garber requested extra police presence in anticipation of a large BLM turnout, *id.* ¶ 23, signifying that BLM's members were denied courthouse access based not on their race but on their membership in an organization with a vested interest in the hearing's outcome. *Id.* Although BLM's purpose of protecting "black and brown people," *see id.* ¶ 8, could support a claim of exclusion from the courthouse based on one's BLM membership as the basis for an equal protection claim, plaintiffs must bridge this gap by alleging what particularized facts show BLM members were purposefully

denied access based on their race. Allegations that other persons who are not white were also excluded from the courthouse does not save the claim because it is unclear if those persons are plaintiffs. *See*, *e.g., id.* ¶ 19 ("Individuals who appeared to be Black or non-white were examined and questioned, and those whom the Sheriff's deputies determined to be Black, or members of Black Lives Matter were summarily denied access."). This claim is DISMISSED with leave to amend.

### D. Constitutional Claims against the County (Claims 1-3)

The three § 1983 claims above are pled against every defendant without differentiation, including the County. *See id.* ¶¶ 37-42. As relevant to the claims against the County, plaintiffs allege the sheriffs' mistreatment of BLM members reflects the "conscious and institutional racial bias that exists within the San Joaquin County Sheriff's Office." *Id.* ¶ 22. Plaintiffs further allege "on information and belief" that the constitutional violations they complain of "were caused by customs, policies, directives, practices, acts and omissions of authorized [County] policy makers . . . and other supervisory officials . . . who encouraged, authorized, directed, condoned, and ratified the unconstitutional and unlawful conduct complained of herein." *Id.* ¶ 32. Finally, plaintiffs allege these customs and practices "include, but are not limited to discriminatory conduct against individuals and organizations that protest police violence against civilians; black and brown people who engage in First Amendment protected activity; the failure to maintain adequate policies, and to adequately train, supervise and control Sheriff's deputies concerning the policing of individuals who engage in protests and other expressive activities with respect to insuring [sic] that these individuals' constitutional rights are not violated." *Id.*

Because the plaintiffs' § 1983 claims against the individual defendants have now been dismissed for failure to state a claim, these derivative § 1983 claims against the County must also be dismissed. *See Brass v. Cty. of Los Angeles*, 328 F.3d 1192, 1200 (9th Cir.2003) (explaining all § 1983 claims require are underlying constitutional deprivation); *see also Shadd v. Cty. of Sacramento*, No. 2:12-CV-02834-MCE, 2013 WL 6389132, at *6 (E.D. Cal. Dec. 6, 2013)

(explaining because "*Monell* claim arises out of the due process violations discussed above . . . Plaintiffs' *Monell* claim is derivative of those claims and fails with them.").

But the three claims against the County face additional deficiencies. Plaintiffs allege no specific action or ratification attributable to a policy-making official, as is required to hold the County liable for an isolated decision. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Plaintiffs cite no incidents beyond those giving rise to this case sufficient to show the officials acted pursuant to an official custom, practice or policy. *See Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.") (original emphasis). And they allege no specific facts showing any officer lacked adequate training or supervision, or other incidents revealing an official policy of inadequate training. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985) (reversing jury verdict for plaintiff because jury instruction allowed jury to infer official policy of inadequate training based on isolated incident); *AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (*Twombly* and *Iqbal* pleading standard also applies to *Monell* claims); *Anakin v. Contra Costa Reg'l Med. Ctr.*, No. 16-CV-00161-MEJ, 2016 WL 2893257, at *4 (N.D. Cal. May 18, 2016) (noting § 1983 claim against municipality cannot survive based on bare allegations that those actions violated an official custom or policy, without supporting details). Plaintiffs' amended complaint, if any, must address these shortfalls as well as the other deficiencies noted above.

IV.     STATE CLAIMS (Claims 4-6)

Defendants move to dismiss each state claim for failure to plead compliance with the California Tort Claims Act ("CTCA"). Mot. at 14. Plaintiffs concede this deficiency and request leave to amend, adding allegations that they filed a tort claim on February 4, 2018, which

the County rejected on February 15, 2018.  Opp'n at 8.  Accordingly, Claims 4, 5 and 6 are DISMISSED with leave to so amend.

V.    CONCLUSION

The motion to dismiss is GRANTED in full.  Within 21 days, plaintiffs may file an amended complaint that addresses the shortfalls reviewed above.  Any amended complaint shall distinguish the named defendants by explaining what alleged wrongdoing is attributable to each; better differentiate which claims pertain to the October 30 incident, the January 29 incident or both; and add factual allegations that plausibly show the alleged wrongdoing was part of a County-wide practice, custom or failure to train.

This order resolves ECF Nos. 4 and 13.

IT IS SO ORDERED.

DATED:  August 2, 2018.

_____
UNITED STATES DISTRICT JUDGE