GREGORY B. THOMAS, ESQ. (SBN 239870)
TEMITAYO O. PETERS, ESQ. (SBN 309913)
BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation
555 12th Street, Suite 1800
Oakland, CA 94607
Telephone: (510) 834-4350
Facsimile: (510) 839-1897
gthomas@bjg.com
opeters@bjg.com

Attorneys for Defendants SAN JOAQUIN COUNTY, STEVE
MOORE, DAVE OLIVER, JOE PETRINO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK LIVES MATTER-STOCKTON CHAPTER, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>SAN JOAQUIN COUNTY SHERIFF'S OFFICE, et al.,<br><br>                Defendants. | Case No. 2:18-cv-00591-KJM-AC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DATE:** October 19, 2018<br>**TIME:** 10:00 a.m.<br>**COURTROOM:** 3, 15th Floor, 501 I Street, Sacramento, CA 95814<br>**JUDGE:** Honorable Judge Kimberly Mueller<br><br>First Amended Complaint filed August 13, 2018 |

**NOTICE OF MOTION TO DISMISS**

**TO PLAINTIFFS AND THEIR ATTORNEY:**

**PLEASE TAKE NOTICE** that on October 19, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard before Honorable Judge Kimberly J. Mueller, Courtroom 3, 15th Floor, 501 I Street, Sacramento, CA 95814, Defendants SAN JOAQUIN COUNTY, STEVE MOORE, DAVE OLIVER and JOE PETRINO (collectively "Defendants"), will move to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) on the following grounds:

1.      Defendants are immune from suit under the Eleventh Amendment because they were providing courtroom services during the events alleged in Plaintiffs' First Amended Complaint;

2.      Even if Defendants are not immune from suit under the Eleventh Amendment, Plaintiffs' First Amended Complaint is too vague to impose municipal and supervisory liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658; and

3.      Finally, all of Plaintiffs' claims fail to state a valid claim for relief as a matter of law.

This motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, request for judicial notice, the pleadings on file in this action, and on such further argument that may be heard by this Court.

**CERTIFICATION**

Pursuant to this Court's March 20, 2018 order [ECF No. 3-1], I certify that my office attempted to meet and confer with Plaintiffs' counsel, prior to filing of this motion, but that such efforts were ultimately unsuccessful due to Plaintiffs' counsel's failure to substantively respond to our efforts to meet and confer on this issue, Defendants' current deadline for filing a responsive pleading pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and this Court's requirement that all stipulations to postpone deadlines by approved by this Court prior to the expiration of the deadline. *See* E.D.L.R. 143(b). Our efforts to meet and confer with Plaintiffs' counsel before filing this motion are briefly summarized below:

1.      Plaintiffs' filed their First Amended Complaint ("FAC") on August 13, 2018.

2.      Upon receiving service of Plaintiffs' FAC, we began to analyze and investigate Plaintiffs' new allegations and conduct research to evaluate potential defenses.

3.      On August 22, 2018, we e-mailed Plaintiffs' counsel, Ms. Yolanda Huang, a detailed meet and confer letter outlining the arguments Defendants raise in this motion.  In light of the fact that Defendants' deadline for responding to Plaintiffs' FAC is today, we offered to stipulate to extend Defendants' deadline for filing a response to Plaintiffs' FAC in order to give Ms. Huang additional time to prepare a substantive response to the arguments outlined in our meet and confer letter.  In doing so, we asked Ms. Huang to advise us by 5pm on August 23, 2018 if she was amenable to said stipulation to give Defendants ample time to prepare and file the necessary stipulation with the Court pursuant to Eastern District Local Rule 143(b).  Attached as **Exhibit A** is our August 22, 2018 letter to Ms. Huang.

4.      On August 24, 2018, Ms. Huang e-mailed my associate, Ms. Temitayo Peters, a response to our letter.  In doing so, Ms. Huang failed to substantively respond to any of the arguments outlined in our August 22, 2018 letter.  Moreover, she conditioned her willingness to further meet and confer on allegations that lack foundation, that Defendants' deny and on a request that was substantively and procedurally improper in connection with Defendants' good faith effort to meet and confer prior to filing this motion.  Attached as **Exhibit B** is Ms. Huang's August 24, 2018 letter to my office.

5.      Later that same day, we sent Ms. Huang a second letter restating our willingness to meet and confer on the substantive nature of this motion.  Although Ms. Huang sent us additional correspondence, her correspondence did not indicate a willingness to meet and confer on the substantive nature of the arguments Defendants' make in this motion.  Indeed, she again conditioned her willingness to further meet and confer on the condition noted above.  As a result, and in light of the fact that Defendants' deadline for filing this motion is today and Eastern District Local Rule 143(b), we determined that meet and confer efforts had been exhausted and elected to proceed with filing this motion.

///

1    6.    Attached as **Exhibit C** is the full email chain referenced above in paragraphs 4 and

2    5 and out August 24, 2018 letter to Ms. Huang.

3    DATED:  August 27, 2018

4                                        BOORNAZIAN, JENSEN & GARTHE
                                         A Professional Corporation

5

6                                        By: /s/ *GREGORY B. THOMAS, ESQ.*
                                            GREGORY B. THOMAS, ESQ.
7                                           TEMITAYO O. PETERS, ESQ.
                                         Attorneys for Defendants SAN JOAQUIN
8                                        COUNTY, STEVE MOORE, DAVE OLIVER,
                                                  JOE PETRINO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION TO DISMISS COMPLAINT – Case No. 2:18-CV-00591-KJM-AC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................1

II.   SUMMARY OF PROCEEDINGS AND PLAINTIFFS' ALLEGATIONS ............................2

      A.  Procedural Background ................................................................................2

      B.  Plaintiffs' Allegations ................................................................................2

           1.   Summary of the New Background Allegations in Plaintiffs' FAC................2

           2.   Summary of the New Allegations Concerning the Subject Incidents............3

III.  SUMMARY OF ARGUMENT .................................................................................4

IV.   ARGUMENT .........................................................................................................4

      A.  Standard of Review ....................................................................................4

      B.  Plaintiffs' Federal Claims Fail as a Matter of Law and Should be Dismissed With
          Prejudice. ...................................................................................................5

           1.   Defendants are Immune from Plaintiffs' Federal Claims Under the Eleventh
                Amendment. ........................................................................................6

           2.   Plaintiffs' Allegations Are Still too Vague to Establish Supervisory and Municipal
                Liability. .............................................................................................8

           3.   All of Plaintiffs' Federal Claims Fail to State a Valid Claim for Relief as a Matter of
                Law. ..................................................................................................10

                a.  Plaintiffs Cannot State a Valid First Amendment Claim because They Admit
                    that They Were Not Exercising Their Right to Association and Their Right to
                    Free Speech Was Not Violated During the Subject Incidents................................10

                b.  Plaintiffs Do Not State a Valid Sixth Amendment Claim because No Criminal
                    Defendant was Prevented from Attending a Scheduled Hearing and the Public
                    Does Not Have a Protected Right to Attend Pre-trial Criminal Proceedings..........12

                c.  Plaintiffs Do Not State a Valid Fourteenth Amendment Claim because They
                    Have Waived Their Equal Protection Claim and Their Allegations Do Not Give
                    Rise to a Valid Due Process Claim. ........................................................14

      C.  Plaintiffs' State Law Claims Also Fail as a Matter of Law and Should be Dismissed........15

           1.   Plaintiffs Do Not State a Valid Ralph Act Claim because They Do
                Not Allege that They Were Subjected to Violence or Threat of Violence. ..................15

           2.   Plaintiffs Do Not State a Valid Bane Act Claim because They Do Not Allege that They
                Suffered the Threat of Violence or Actual Violence......................................16

           3.   Plaintiffs Do Not State a Valid Negligene Claim because it is
                Impermissibly Vague and for the Same Reasons Their Section 1983 Claims Fail........17

V.    CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

**CASES**

<ins>**STATE**</ins>

*Austin B. Escondido Union School Dist.*,
    149 Cal.App.4th 860, 880-81 (Cal. Ct. App. 2007) ...............................................15, 16, 17

*Hayes v. County of San Diego*, 57 Cal.4th 622, 629 (2013) .....................................................17

*Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 958 (2012) ......................................17

<ins>**FEDERAL**</ins>

*Albright v. Oliver*, 510 U.S. 266, 271 (1994).........................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .......................................................................5, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ....................................................5

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ....................................................9

*Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) .....................................................................10, 11

*Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002) .......................................................................14

*Foman v. Davis*, 371 U.S. 178, 182 (1962).........................................................................5, 10

*Gannett Co. v. DePasquale*, 443 U.S. 368, 379 (1979) .....................................................12, 13

*Hartman v. Gilead Scis., Inc.*,
    536 F.3d 1049, 1055 (9th Cir. 2008).............................................................5, 9, 17

*Hawkins v. Comparet-Cassani*, 1999 U.S. LEXIS 4473, *17-20 (C.D. Cal. 1999) ........................7

*Heliotrope Gen., v. Ford Motor Co.*, 189 F.3d 971, 981, fn. 18 (9th Cir. 1999) .......................7

*Illinois v. Allen*, 397 U.S. 337, 342-47 ...........................................................................12, 13

*Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)....................................14

*Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) ................................................14

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ...............................................................5

*Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) .........................................................8

*McMillian v. Monroe County*, 520 U.S. 781, 783-84 (1997)....................................................6

*Monell v. Dep't of Social Services*, 436 U.S. 658, 690, fn. 55 (1978) ...................................8, 9

*Rojas v. Sonoma County*, 2011 U.S. Dist. LEXIS 122276 (N. D. Cal. 2011) .............................6

*Scocca v. Smith*, 912 F.Supp.2d 875, 883-84 (N.D. Cal. 2012) ..............................................7

*Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)................5

*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ...........................................................8, 18

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ............................................................9, 10

*Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996)................................8

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ..........7

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 62-64 (1989).................................................6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
COMPLAINT – Case No. 2:18-CV-00591-KJM-AC

**STATUTES**

California Government Code § 74820.2 ..............................................................................7

California Government Code § 77003 ................................................................................7

California Government Code § 77200 ................................................................................7

California Civil Codes § 51.7...................................................................................4, 15

California Civil Codes § 52.1...................................................................................4, 16

California Penal Code § 26150 ..........................................................................................7

**RULES**

42 U.S.C. § 1983 ...........................................................................................*passim*

Federal Rule of Civil Procedure 12(b)(6) ........................................................................4

Federal Rule of Civil Procedure 15(a)(2)..........................................................................5

**UNITED STATES CONSTITUTION**

First Amendment...............................................................1, 4, 5, 7, 10, 11, 15

Fourth Amendment ...................................................................................1, 7

Fifth Amendment ...............................................................1, 4, 5, 7, 14, 15

Sixth Amendment.............................................................4, 5, 12, 13, 15

Eleventh Amendment...............................................................4, 6, 7

Fourteenth Amendment.................................................1, 4, 5, 7, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs' allegations in this matter raise one simple issue; the reasonableness of the San Joaquin County Sheriff's Office's efforts to ensure security and peaceable operations at the San Joaquin Superior Courthouse.  In sum, Plaintiffs allege that Defendants Dave Oliver and Joe Petrino and a "phalanx" of unnamed deputy sheriffs prevented unidentified "black and brown individuals" and anyone deemed to be connected to Plaintiff Black Lives Matter-Stockton Chapter from accessing the courthouse on October 30, 2017.  On January 29, 2018 they allege that Plaintiffs Denise Friday, Dionne Smith-Downs and Lareesha Brown were followed down a hallway in courthouse and ultimately chased by unidentified deputy sheriffs after a court hearing in manner that made them feel "fearful and anxious and concerned for their personal safety" since "black and brown young men have been shot and killed" by deputy sheriffs.  In light of the above allegations, Plaintiffs seek to assert various state tort claims and 42 U.S.C. § 1983 claims under the First, Fourth, Fifth and Fourteenth Amendments.

This is Plaintiffs' second attempt to assert valid claims for relief against Defendants. Despite the addition of several newly-named plaintiffs and the addition of more detailed allegations concerning the history of #BlackLivesMatter movement, Defendants' alleged wrongful conduct and the subject incidents, Plaintiffs' First Amended Complaint suffers from many of the same deficiencies as their original Complaint.  Not only does Plaintiffs' amended pleading fail to "differentiate which claims pertain to the October 30 incident, the January 29 incident or both," but it also fails to "distinguish the named defendants by explaining what alleged wrongdoing is attributable to each" and "plausibly show the alleged wrongdoing was part of a County-wide practice, custom or failure to train" as this Court ordered.  ECF No. 15 at 8.  Plaintiffs' failure to state any valid claims for relief as a matter of law, coupled with the vagueness of their amended pleading and the fact that all of the defendants are immune from Plaintiffs' federal claims under the Eleventh Amendment, proves fatal.  As a result, Defendants respectfully request that the Court grant this Motion and dismiss Plaintiffs' First Amended Complaint with prejudice.

///

## II.  SUMMARY OF PROCEEDINGS AND PLAINTIFFS' ALLEGATIONS

**A.      Procedural Background**

Plaintiffs filed their original civil rights Complaint on March 20, 2018, alleging various federal and state claims against Defendants.  ECF No. 1.  On August 2, 2018, the Court issued an order granting Defendants' Motion to Dismiss Plaintiffs' Complaint [ECF No. 4] in full.  ECF No. 15.  The Court also granted Plaintiffs leave to file an amended complaint that addressed the deficiencies noted in its order within twenty-one days.  *Id.*  In compliance with the deadline imposed by the Court, Plaintiffs filed their First Amended Complaint ("FAC") on August 13, 2018.  ECF No. 16.

**B.      Plaintiffs' Allegations**

**1.      Summary of the New Background Allegations in Plaintiffs' FAC**

There are several notable differences between Plaintiffs' original Complaint and their FAC.  First, Plaintiffs' FAC names several new plaintiffs: (1) Denise Friday, a founding member of Plaintiff Black Lives Matter-Stockton Chapter ("BLM"); (2) Lareesha Brown, a BLM member who was arrested and charged on March 7, 2017 for protest activities; and (3) Kenneth Marbley, a BLM member who was also arrested and charged on March 7, 2017 for protest activities.  *Id.* at ¶¶18-20.  It also contains a more detailed explanation of the purpose of the "#BlackLivesMatter movement" and Plaintiff BLM's affiliation with said movement.  *Id.* at ¶¶ 29-32, 37-38.  In sum, Plaintiffs now allege that Plaintiff BLM's purpose is "to address police violence against black and brown people, including the shooting and killing of unarmed black and brown people; the economic and opportunity inequality that black and brown people experience on a daily basis; and, racial equality in the criminal justice system."  *Id.* at ¶ 31.  Plaintiff BLM accomplishes this purpose by engaging in a wide-range of community events in Stockton, California, including "regular protests" and "court support" whenever its members who are arrested at protests have court hearings.  *Id.* at ¶¶ 31, 33, 37.

Next, Plaintiffs' FAC contains more detailed allegations concerning the named Defendants' alleged wrongful conduct.  In sum, Plaintiffs now specifically allege that the San Joaquin County Sheriff's Office ("SJCSO") has implemented and enforced policies of taking

1  actions against:  (1) "plaintiffs for plaintiffs' exercise of free speech and assembly;" (2) "plaintiffs'

2  vigorous assertion of their factual innocence and the mounting of a vigorous defense against

3  criminal charges;" and (3) Plaintiffs Brown's and Marbley's respective rights to public hearings

4  and public trials.  *Id.* at ¶¶ 7-9.  They also generally allege that the SJCSO contains "institutional

5  racism" and that Defendant Steve Moore has specifically developed policies and practices to

6  protect "officers from accusations of [racially motivated] excessive violence and use of force," as

7  evidenced by Dr. Bennet Omalu's accusations concerning Defendant Moore's alleged interference

8  with coroner's office reports.  *Id.* at ¶¶ 36, 40.

9          **2.**        **Summary of the New Allegations Concerning the Subject Incidents**

10          Finally, Plaintiffs' FAC also contains new details concerning the October 30, 2017 and

11  January 31, 2018 incidents that are the subject of this lawsuit (collectively, "Subject Incidents").

12  Plaintiffs now specifically allege that on October 30, 2017, Plaintiff BLM "organized court

13  support" for five members, including Plaintiffs Brown and Marbley, who had scheduled criminal

14  court hearings at the San Joaquin County Superior Courthouse in conjunction with their arrests

15  during a March 2017 protest.  *Id.* at ¶¶ 33, 39.  They further specifically allege that Defendants

16  Petrino and Oliver were part of the "line of sheriff deputies" who allegedly delayed Plaintiff

17  Brown from entering the courthouse and prevented unspecified other individuals from accessing

18  the courthouse on this date.  *Id.* at ¶¶ 24-25, 42-43.

19          As for the January 31, 2018 incident, Plaintiffs now specifically allege that Plaintiff BLM

20  again "organized court support" for the five above-referenced members on this date.  *Id.* at ¶ 44.

21  After the hearing, Plaintiffs allege that several members of Plaintiff BLM, including Plaintiffs

22  Friday, Smith-Downs and Brown, were followed through the courthouse by unnamed deputy

23  sheriffs who "broadcast[ed] a clear hostility in their demeanor" and made them feel

24  "uncomfortable and nervous."  *Id.*  After the members arrived in the courthouse lobby, they allege

25  that the unnamed deputy sheriffs began "chasing" them through the courthouse, "engaged in

26  menacing and threatening conduct," "verbally insulted" them and "instructed them to leave.  *Id.* at

27  ¶ 45.  Plaintiffs allege that in light of the "clear hostility and threat of violence" displayed by the

28  deputy sheriffs, they exited the courthouse even though they had not engaged in any "disruptive

conduct or anything other than lawful conduct" while they were inside the courthouse.  *Id.* at ¶ 46.

Based on the Subject Incidents, Plaintiffs' FAC asserts all of their original causes of action except for their equal protection claim under Section 1983 and Fourteenth Amendment, which has been replaced by a due process claim under Section 1983 and the Fifth and Fourteenth Amendments.  *See generally Id.* at ¶¶ 70-89.

### III. SUMMARY OF ARGUMENT

Plaintiffs' FAC fails for several reasons.  First, all of Plaintiffs federal claims fail as a matter of law against all defendants, because Defendants were providing courthouse security as state actors when the Subject Incidents occurred and are thus entitled to Eleventh Amendment immunity.  Even if Defendants are not entitled to Eleventh Amendment immunity, Plaintiffs' federal claims are too vague to establish municipal and supervisory liability.  Moreover, even if Plaintiffs' FAC contained sufficient facts to assert their Section 1983 federal claims: (1); their First Amendment claim fails because they admit that they were not exercising their right to association and their free speech rights were not violated; (2) their Sixth Amendment claim fails because this right is held by criminal defendants alone and there is no allegation that the criminal-defendant plaintiffs were prevented from attending their pretrial hearings on either date; and (3) their Fifth and Fourteenth Amendment claims fail because Plaintiffs waived their equal protection claim, do not allege any federal action that entitles them to relief under the Fifth Amendment and fail to allege any facts that would give rise to a claim under the due process clause of the Fourteenth Amendment.  Finally, Defendants state claims under California Civil Codes §§ 51.7 and 52.1 and for negligence fail as a matter of law in light of the failure of their Section 1983 claims and because these claims are impermissibly vague and Plaintiffs' do not allege threats of violence or actual violence during the Subject Incidents.

### IV. ARGUMENT

**A.     Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that fails to state a claim upon which relief can be granted.  In considering whether a complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the

-4-

complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Hartman v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008).

Although a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This requires "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Instead, a claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 U.S. at 663.  As such, dismissal for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citations omitted).

Leave to amend should be freely granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The court need not grant leave to amend, however, when it "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Other grounds for denying leave to amend include a "repeated failure to cure deficiencies by amendments previously allowed" and the "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B.      Plaintiffs' Federal Claims Fail as a Matter of Law and Should be Dismissed With Prejudice.**

Plaintiffs attempt to assert three causes of action under 42 U.S.C. § 1983 ("Section 1983") and the First, Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution.  ECF No. 16 at ¶¶ 70-82.  All of these claims fail as a matter of law for the three reasons detailed below.

///

///

1. **Defendants are Immune from Plaintiffs' Federal Claims Under the Eleventh Amendment.**

First, Plaintiffs' federal claims fail to state a valid claim for relief as a matter of law because Defendants are entitled to immunity under the Eleventh Amendment.  The Supreme Court has held that States and State officials acting in their official capacities are not "persons" under Section 1983 and are thus immune from suit.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 62-64 (1989).  Although local government officials are generally not entitled to Eleventh Amendment immunity from Section 1983 claims, the Supreme Court has held that they are entitled to immunity when they are acting "as state agents with final policymaking authority over the complained-of actions." *McMillian v. Monroe County*, 520 U.S. 781, 783-84 (1997).  To determine whether a local government official is entitled to Eleventh Amendment immunity as a state actor, a court must consider whether the official is representing the State or the local municipality when engaging in a particular function, while analyzing any state law applicable to defining that function.  *Id.* at 785-86.

The unpublished case entitled *Rojas v. Sonoma County*, 2011 U.S. Dist. LEXIS 122276 (N. D. Cal. 2011) is directly on point to the matter at hand.  In *Rojas*, a plaintiff asserted various Section 1983 claims against a deputy defendant who physically assaulted and called him names during a court hearing.  *Id.* at *1-3.  In analyzing the plaintiffs' claims, the California Northern District Court applied *McMillian* and looked to California law to determine whether the deputy defendant was acting as a state or local official during the complained-of events.  *Id.* at *10-*12. Since various sections of the California Government Code grant the State the "sole responsibility for funding of court operations," which includes hiring marshals and deputies to provide courtroom security services, the court ultimately determined that the deputy defendant was providing courtroom services as a State agent during the complained-of events and thus entitled to Eleventh Amendment immunity from plaintiff's Section 1983 claims.  *Id.* at *11-12.  As a result, the court dismissed plaintiff's Section 1983 claims against both the defendant deputy and the defendant county with prejudice.  *Id.* at *24.

Here, just as in *Rojas*, Plaintiffs' have alleged federal claims under Section 1983 against

-6-

Defendants based on incidents that happened inside the San Joaquin County Superior Courthouse. Although neither of the alleged incidents occurred within a courtroom, they occurred while Defendants were providing security services in accordance with their duties under California law. Cal. Gov. Code § 74820.2 (establishing "a court services division within the San Joaquin County Sheriff's Department to provide security within the superior court"). *See also* Cal. Gov. Code § 77003 (including "court security" within the definition of "court operations") and § 77200 (stating that the State has the sole responsibility of funding court operations). Indeed, Plaintiffs actually admit that a spokesperson for the SJCSO "publicly acknowledged" that the SJCSO was "responsible for making security decisions at the courthouse" on October 30, 2017. ECF No. 16 at ¶ 29. Moreover, Plaintiffs further state "upon information and belief" that Judge Garber requested "additional numbers of [s]herrifs' deputies" at the courthouse on both dates "in anticipation of the court's prepared negative rulings," which seems to be reasonably supported by the information that was in the public realm when the alleged incidents occurred. *Id.* at ¶ 48; Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("RJN"); Exhibits D and E to Decl. Temitayo Peters in Support of Defendants' RJN. *See also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *Heliotrope Gen., v. Ford Motor Co.*, 189 F.3d 971, 981, fn. 18 (9th Cir. 1999). Ultimately, in light of the fact that Defendants were providing courthouse security when the subject incidents occurred, they are entitled to Eleventh Amendment immunity from Plaintiffs' Section 1983 claims and should be dismissed with prejduice. Since the Doe deputy sheriff defendants are also entitled to Eleventh Amendment immunity, Plaintiffs First, Fourth, Fifth and Fourteenth Amendment claims fail as matter of law and should be dismissed from this action with prejudice. *See also Scocca v. Smith*, 912 F.Supp.2d 875, 883-84 (N.D. Cal. 2012) (holding that a sheriff was entitled to Eleventh Amendment immunity for granting and denying concealed weapons licenses under California Penal Code § 26150); *Hawkins v. Comparet-Cassani*, 1999 U.S. LEXIS 4473, *17-20 (C.D. Cal. 1999) (unpublished) (granting a sheriff Eleventh Amendment immunity for providing courthouse security).

**2.    Plaintiffs' Allegations Are Still too Vague to Establish Supervisory and Municipal Liability.**

Next, even if Defendants are not entitled to Eleventh Amendment immunity, Plaintiffs' allegations are too vague to establish supervisory or municipal liability against Defendants.  *See* ECF No. 4 at 13-15.  To impose supervisory liability upon Defendants Moore, Oliver and Petrino (collectively, "supervisory Defendants"),[1] Plaintiffs must allege sufficient facts to establish that each individual was either: (1) personally involved in the constitutional deprivations they allegedly experienced; or (2) that there is a "sufficient causal connection between [each] supervisor's wrongful conduct and the constitutional violation[s]" they experienced.  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citations omitted).

Here, Plaintiffs sue Defendant Moore in his official capacity as the elected Sheriff of the County of San Joaquin, but fail to allege that he was personally involved in either the October 30, 2017 incident or the January 29, 2018 incident.  ECF No. 16 ¶ 23.  Instead, Plaintiffs spend a significant amount of time outlining Defendant Moore's alleged interference with coroner's reports related to in-custody deaths and racially-motivated excessive force claims.  *Id.* at 40.  In doing so, Plaintiffs fail to plead sufficient facts to demonstrate how this alleged interference is causally related to the constitutional violations they allegedly experienced, particularly since Plaintiffs' FAC does not contain any allegations related to in-custody deaths or excessive force.  Plaintiffs also fail to allege specific facts which demonstrate how Defendant Moore's allegedly wrongful conduct led to the alleged constitutional deprivations caused Defendants Oliver and Petrino and the Doe deputy sheriff defendants, such as by alleging facts demonstrating inadequate training or supervision.  Even if Plaintiffs had alleged a sufficient causal connection between Defendant Moore's alleged wrongful conduct and the constitutional deprivations they allegedly

---

[1] Defendants note that the Supreme Court has held that "[o]fficial capacity suits are generally another way of pleading an action against an entity of which the officer is an agent. *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690, fn. 55 (1978).  "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed. *Id.  See also Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996).  Since Plaintiffs also name Defendant San Joaquin County ("County") as a defendant in this action, Defendants Steve Moore, Dave Oliver and Joe Petrino are improper defendants to the extent they are sued in their official capacities.  Therefore, Defendants Moore, Oliver and Petrino respectfully request that they be dismissed from this action with prejudice.

1    endured, however, the Court need not accept as true their unreasonable and unfounded inference

2    that the single unrelated incident they reference is evidence of the SJCSO's clear "hostility and

3    antipathy" towards those who criticize the department  *See Id.* at ¶ 40; *Hartman*, 536 F.3d at 1055.

4    *See also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (holding that "[l]iability for improper

5    custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices

6    of sufficient duration, frequency and consistency that the conduct has become a traditional method

7    of carrying out policy.").

8            Although it is unclear whether Defendants Oliver and Petrino are being sued in their

9    individual or official capacities (or both), it appears that Plaintiffs intend to sue them in their

10   official capacity since Plaintiffs identify them as officers of SJCSO and as the officers "in charge"

11   on October 30, 2017.  ECF No. 16 ¶¶ 24-25.  As explained in further detail below, Plaintiffs'

12   allegations do not establish that any constitutional violations occurred on October 30, 2017.  As a

13   result, liability cannot be imposed upon Defendants Oliver and Petrino for the events that occurred

14   on this date.  Since Plaintiffs do not allege that Defendants Oliver and Petrino were directly

15   involved in the incident that occurred on January 29, 2018 or sufficient facts to establish that they

16   engaged in any form of wrongful conduct that was casually connected to the constitutional

17   deprivations they allegedly endured on this date, Defendants Oliver and Petrino are not liable for

18   the constitutional violations that occurred on this date.

19           As for Defendant San Joaquin County ("County"), municipal liability can only be imposed

20   if Plaintiff can sufficiently allege that the County inadequately trained its employees in the

21   execution of their duties and if this failure was an actual policy or custom.  *City of Canton, Ohio v.*

22   *Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).  In

23   granting Defendants' initial motion to dismiss [ECF No. 4], the Court noted that Plaintiffs' claims

24   against the County were deficient because Plaintiffs failed to allege a "specific action or

25   ratification attributable to a policy-making official," "incidents beyond those giving rise to this

26   case sufficient to show the officials acted pursuant to an official, practice or policy" and "specific

27   facts showing any officer lacked adequate training or supervision [. . .]."  ECF No. 15 at 7.  Thus,

28   the Court stated that Plaintiffs' amended complaint should ". . . add factual allegations that

-9-

1  plausibly show the alleged wrongdoing was part of a County-wide practice, custom or failure to

2  train." *Id.* at 8.

3         Here, although Plaintiffs now allege that Defendants Oliver and Petrino were involved in

4  the October 30, 2017 incident, they fail to allege the violation of any specific SJCSO policies

5  during either of the Subject Incidents, the existence of a constitutionally-deficient policy or custom

6  or that any of the County's employees were inadequately trained and/or supervised to execute their

7  duties.  Although Plaintiffs attempt to use their allegations concerning Defendant Moore's alleged

8  interference with coroner's reports to establish an unconstitutional custom or practice, this attempt

9  fails because Defendant Moore's alleged wrongful conduct is irrelevant to the matter at hand and

10 cannot be used to establish a custom of sufficient duration, frequency and consistency under

11 *Monell* for the reasons detailed above.  *Trevino*, 99 F.3d at 918.  Plaintiffs' repeated failure to

12 allege sufficient facts to impose municipal and supervisory liability upon Defendants suggests that

13 they cannot allege sufficient facts to cure the deficiencies that caused the Court to originally

14 dismiss their federal claims against Defendants.   As a result, Defendants respectfully request that

15 Plaintiffs federal claims against them be dismissed with prejudice.  *Foman*, 371 U.S. at 182.

16      **3.**    **All of Plaintiffs' Federal Claims Fail to State a Valid Claim for Relief as a Matter of Law.**

17

18           **a.**    **Plaintiffs' Cannot State a Valid First Amendment Claim because They Admit that They Were Not Exercising Their Right to Association and Their Right to Free Speech Was Not Violated During the Subject**

19                 **Incidents.**

20        Plaintiffs' first cause of action is asserted under Section 1983 and the First Amendment's

21 rights to free speech and association.  *Id.* at ¶ 74.  The Court previously dismissed this claim when

22 it determined that Plaintiffs had failed to plead that "BLM came together on either date in 2017 or

23 2018 to express a collective point."  ECF No. 15 at 4.  The Court also stated that "organized

24 support is not the same as expressing" the type of "collective point" that is protected under the

25 First Amendment.  *Id.* (citing *Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) (recognizing that the First

26 Amendment protects both a right to free speech and a limited right to freedom of association).

27        Here, it is still unclear whether Plaintiffs' First Amendment claim is asserted in conjunction

28 with the events that occurred on October 30, 2017, on January 31, 2018 or on both dates.

Nevertheless, the allegations in Plaintiffs' FAC make it clear that they were not expressing any First Amendment rights on either date for several reasons.  First, Plaintiffs' FAC makes it clear that BLM members who attend court hearings to provide "court support" frequently wear "earrings or clothing that spell out BLM" to promote Plaintiff BLM's various purposes, such as to increase public awareness of "racial equality in the criminal justice system."  ECF No. 16 ¶ 38.  Although Plaintiffs now allege that the individuals who were denied entrance to the courthouse on October 30, 2018 were wearing BLM-identifying jewelry and clothing, they do not allege that these individuals were gathered together to express a collective point when they were denied entrance to the courthouse.  *Id.* at ¶ 43.  Indeed, Plaintiffs plead the exact opposite by again emphasizing that these individuals were "doing nothing more than walking toward the courthouse and seeking entry, in the same manner as every other individual who approached the building," and not engaged in "any disruptive or unlawful conduct" when their access was denied.  *Id.  See also Stanglin*, 490 U.S. at 25 (stating in dicta; "It is possible to find some kernel of expression in almost every activity a person undertakes – for example, walking down the street or meeting one's friends at a shopping mall – but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.").  In addition, to the extent that wearing BLM-identifying jewelry and clothing can be classified as an exercise of free speech, Plaintiffs fail to allege that they were prevented from wearing said items or asked to remove them by any defendant on this date.

Similarly, Plaintiffs fail to allege that they or any BLM member were gathered together to express a collective point when they went to the courthouse to provide "court support" on January 31, 2018.  *See generally Id.* at ¶¶ 44-46.  Indeed, even if showing up at a courthouse to provide "court support[2]" was the type of expressive conduct that the First Amendment protects, all of Plaintiffs' allegations relating to this incident occur after they had already attended the referenced hearing.  *Id.*  Plaintiffs also fail to allege that they or any BLM member were wearing BLM-identifying clothing on this date.  *Id.*  Although they allege that at one point Plaintiff Brown stated to unnamed deputies: "No Justice, No Peace," they admit that this statement was made in a

---

[2] Defendants note that Plaintiffs do not allege that Defendants' prevented them from gathering together on either October 30, 2017 or January 31, 2018 to provide the so-called "court support."

"conversational tone" and do not allege that the unnamed deputies reacted negatively to this statement at the time it was made.  *Id.* at ¶ 44.  As a result, Plaintiffs' first cause of action under the First Amendment fails as a matter of law and should be dismissed with prejudice.

>            **b.       Plaintiffs' Do Not State a Valid Sixth Amendment Claim because No Criminal Defendant was Prevented from Attending a Scheduled Hearing and the Public Does Not Have a Protected Right to Attend Pre-trial Criminal Proceedings.**

Plaintiffs' second cause of action is asserted under Section 1983 and the Sixth Amendment's right to public trial. *Id.* at ¶ 78.  The Court dismissed Plaintiffs' Sixth Amendment claim from their original Complaint on the grounds of lack of standing.  ECF No. 15 at 4-5. Although Plaintiffs' FAC names new plaintiffs and asserts new allegations in an attempt to resolve this issue, their Sixth Amendment claim still fails as a matter of law for the reasons stated below.

The Sixth Amendment grants criminal defendants a "right to a speedy and public trial, by an impartial jury." *Gannett Co. v. DePasquale*, 443 U.S. 368, 379 (1979).  Although the Supreme Court has uniformly recognized that the Sixth Amendment's "public-trial guarantee" is "created for the benefit of the defendant," it has not recognized this as a right belonging to the public.  *Id.* at 380-81, 391.  *Gannett*, 443 U.S. at 387.  In doing so, the Court found "no persuasive evidence that at common law members of the public had any right to attend pretrial proceedings; indeed" it found "substantial evidence to the contrary."  *Id.* at 387.

Here, since it is still unclear as to whether Plaintiffs' Sixth Amendment claim is being asserted in conjunction with the October 30, 2017 incident or the January 31, 2018 incident.  In regard to the first incident, Plaintiffs fail to allege that any of the five BLM members who were criminal defendants on October 30, 2017 were completely prevented from attending their scheduled pretrial hearing before Judge Garner.  *See generally* ECF No. 16.  In fact, Plaintiffs explicitly allege that Plaintiff Brown's entry into the courthouse was merely delayed; not that she was completely prevented from accessing the courthouse on this date. *Id.* at ¶¶ 24-25.  *See also Illinois v. Allen*, 397 U.S. 337, 342-47 (holding that although a defendant had a Sixth Amendment right to attend his own trial, this right was not absolute and that he could be barred from his own trial due to his disruptive conduct).  It also went to great lengths in dicta to detail the "common-

-12-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS FIRST AMENDED COMPLAINT – Case No. 2:18-CV-00591-KJM-AC

law right of the public to attend criminal trials."   Plaintiffs do not allege that Plaintiff Marbley, the

only other named plaintiff who had a criminal hearing on that date, was similarly delayed or

completely prevented from accessing the courthouse. *See generally* ECF No. 16.  They also admit

that all five BLM members were able to attend their January 29, 2018 pretrial hearing before Judge

Garner.  *Id*. at ¶ 44.  As a result, Plaintiffs' Sixth Amendment claim fails to the extent that it is

being asserted based on a defendant's right to attend his own trial.

To the extent that Plaintiffs' Sixth Amendment claim is asserted based on a defendant's

"public-trial guarantee," this claim fails as alleged by the non-criminal defendant Plaintiffs since

the Supreme Court has recognized that this right does not belong to the general public and is

inapplicable to pre-trial hearings. *Gannett* at 380-81, 391.  It also fails as alleged by the criminal

defendant Plaintiffs, because Plaintiffs never allege that every member of the public was denied

access to their criminal court hearings.  Instead, Plaintiffs simply allege that individuals who were

"brown or black" were generally denied entrance to the courthouse on October 30, 2017 and they

actually allege that several members of the public, including BLM members, were present during

the January 29, 2018 hearing. *Id*. at ¶¶ 43-44.  Insofar as Plaintiffs' allegations could plausibly

point to a limited closure effectuated under Judge Garber's direction, such closure was justifiable

in light of the information that was publically available prior to both incidents and the BLM

member's vested interest in the outcome of the hearings.  RJN; Exh. D and E to Decl. of Temitayo

Peters in Support of RJN. *See also Gannett*, 443 U.S. at 389 (noting in dicta that under English

common law, the public can be excluded from a preliminary proceeding if "the magistrate thinks

that the needs of justice will thus be best answered"). *See also Illinois*, 397 U.S. at 343 (stating in

dicta that "[i]t is essential to the proper administration of criminal justice that dignity, order, and

decorum be the hallmarks of all court proceedings in our country.  The flagrant disregard in the

courtroom of elementary standards of proper conduct should not and cannot be tolerated.").

Therefore, Plaintiffs' second cause of action under the Sixth Amendment fails as a matter of law

and should be dismissed with prejudice.

///

///

1

        **c.**       **Plaintiffs Do Not State a Valid Fourteenth Amendment Claim because They Have Waived Their Equal Protection Claim and Their Allegations Do Not Give Rise to a Valid Due Process Claim.**

2

3        Plaintiffs' original third cause of action was asserted under the equal protection clause of

4  the Fourteenth Amendment.  ECF No. 1 ¶¶ 41-42.  When the Court dismissed this claim with leave

5  to amend, upon finding that Plaintiffs' allegations suggested that Plaintiff BLM's members were

6  denied access from the courthouse based on their membership in the organization, not on the basis

7  of their race, it instructed Plaintiffs to allege "particularized facts" to correct this deficiency.  ECF

8  No. 15 at 5-6.  Once again, Plaintiffs' FAC fails to allege any such particularized facts that suggest

9  that Plaintiff BLM's members were denied access to the courthouse based on their race as opposed

10  to their membership in the organization.  *See, e.g.* ECF No. 16 ¶ 43.  Even if Plaintiffs had alleged

11  such particularized facts, however, they waived their equal protection claim by failing to replead it

12  in their FAC.  *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (superseded by statute

13  on other grounds).

14        Plaintiffs' third cause of action as alleged in their FAC now seeks to assert claims under

15  Section 1983 and the due process clauses of the Fifth and Fourteenth Amendments.  *Id.* at ¶¶ 81-

16  82.  Although both the Fifth and Fourteenth Amendment prevent a person from being deprived

17  "life, liberty or property without due process of law," the Fifth Amendment only applies to federal

18  action while the Fourteenth Amendment applies to state and local governments.  *Dusenbery v.*

19  *U.S.*, 534 U.S. 161, 167 (2002).  To determine whether a plaintiff has pled a valid substantive due

20  process claim under the Fourteenth Amendment, a court must first "identify the specific

21  constitutional right allegedly infringed," since Section 1983 "is not itself a source of substantive

22  rights," but merely "a method for vindicating federal rights elsewhere conferred."  *Albright v.*

23  *Oliver*, 510 U.S. 266, 271 (1994).  A procedural due process claim under the Fourteenth

24  Amendment, on the other hand, requires a Court to determine: (1) whether a life, liberty or

25  property right has been interfered with, and if so (2) whether the "procedures attendant upon that

26  deprivation were constitutionally sufficient."  *Kentucky Dep't of Corrections v. Thompson*, 490

27  U.S. 454, 460 (1989).

28

Here, Plaintiffs yet again fail to specifically tie their newly-alleged due process claim to either of the subject incidents or to allege sufficient facts to allow Defendants to determine whether they are seeking to assert a substantive due process claim or a procedural due process claim. This failure alone justifies dismissal of this cause of action. *Iqbal*, 556 U.S. at 678. However, turning to the facts that are alleged, it is clear that Plaintiffs' third cause of action should be dismissed with prejudice to the extent that Plaintiffs seek to assert it under the Fifth Amendment since they fail to allege any federal action on either October 20, 2017 or January 29, 2018. In light of the fact that Plaintiffs' claims under the First and Sixth Amendment fail as matter of law, this claim also fails to extent that Plaintiffs are attempting to assert a substantive due process claim. As for any alleged procedural due process claim, nothing in Plaintiffs' FAC suggests that any defendant unconstitutionally interfered with a life, liberty or property right owed to any named Plaintiff. Accordingly, Plaintiffs' third cause of action under the Fifth and Fourteenth Amendments' due process clauses fail as a matter of law and should be dismissed with prejudice.

**C.      Plaintiffs' State Law Claims Also Fail as a Matter of Law and Should be Dismissed.**

This Court dismissed Plaintiffs' state law claims as alleged in their original complaint due to Plaintiffs failure to plead compliance with the California Tort Claims Act ("CTCA"). ECF No. 15 at 7. Although Plaintiffs' FAC pleads compliance with the CTCA [ECF No. 16 ¶ 69], all of Plaintiffs' state law claims fail as a matter of law and should be dismissed.

**1.      Plaintiffs Do Not State a Valid Ralph Act Claim because They Do Not Allege that They Were Subjected to Violence or Threat of Violence.**

Plaintiffs' fourth cause of action under California Civil Code § 51.7 ("Ralph Act") alleges that unspecified defendants' conduct violated their "right to be free from violence and intimidation by threat of violence because of their actual or perceived political affiliation." ECF No. 16 ¶ 84. To properly plead a claim under the Ralph Act, Plaintiffs must establish that the unspecified defendants threatened or committed violent acts, that were motivated by a protected characteristic to prevent Plaintiffs from exercising a protected right, that Plaintiffs were harmed, and that the defendants' actions were a substantial factor in causing the suffered harm. *Austin B. Escondido*

-15-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS FIRST AMENDED COMPLAINT – Case No. 2:18-CV-00591-KJM-AC

*Union School Dist.*, 149 Cal.App.4th 860, 880-81 (Cal. Ct. App. 2007) (internal citations omitted).

Here, Plaintiffs claim under the Ralph Act fails as it pertains to the October 30, 2017 incident, because do not allege any facts to suggest that Defendants Oliver, Petrino or any of the Doe deputy sheriff defendants threatened or committed violent acts against any Plaintiff on October 30, 2017.  They also fail to sufficiently allege that any defendants' actions were motivated by a protected characteristic.  Instead, they admit that BLM members were refused access to the courthouse on October 30, 2017 specifically because of their affiliation with BLM, which is not a protected characteristic under the Ralph Act.  ECF No. 16 at 43.   Regarding the incident that occurred on January 29, 2018, Plaintiffs simply allege in very broad terms that unnamed deputy sheriffs acted in such a way that allegedly broadcasted "clear hostility in their demeanor" made Plaintiffs feel "uncomfortable and nervous," "chased" Plaintiffs, "engaged in menacing and threatening conduct" and "verbally insulted Plaintiff Brown and her companions."  *Id.* at ¶¶ 44-45.  In doing so, they fail to allege that the unnamed deputies committed or threatened any actual violence while they were engaged in any of these alleged actions.  Nevertheless, even Plaintiffs had alleged any form of violence on this later date, this claim would still fail since there is no allegation that these actions were motivated by a protected characteristic to prevent Plaintiffs from exercising any valid right they were entitled to at the time the actions were committed.  Thus, Plaintiffs' Ralph Act claim fails as a matter of law and should be dismissed.

> **2.    Plaintiffs' Bane Act Fails because They Do Not Allege that They Suffered the Threat of Violence or Actual Violence.**

Plaintiffs' fifth cause of action under California Civil Code § 52.1 ("Bane Act") alleges that unspecified defendants' conduct "constituted interference, attempted interference, by threats, intimidation and coercion, with plaintiff's peaceable exercise and enjoyment of rights secured by the Constitution" and various laws.  ECF No. 16 ¶ 86.  To properly plead a cause of action under the Bane Act, a plaintiff must show, among other elements, that "the defendant interfered or attempted to interfere with the plaintiff's constitutional or statutory by threatening or committing violent acts."  *Austin B.*, 149 Cal.App.4th at 882.  A plaintiff must also show that he "reasonably believed" that if he exercised his constitutional right, the defendant would commit violence against

1   him or his property.  *Id.*  Mere words, unless they include the threat of violence, are insufficient to

2   support a Bane Act claim.  *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 958 (2012).

3         As stated above, Plaintiffs fail to allege that Defendants Oliver, Petrino or any of the Doe

4   deputy sheriff defendants verbally threatened or actually committed violent acts against them on

5   either October 30, 2017 or January 29, 2018.  Although they allege that unnamed deputy sheriffs

6   "verbally insulted Plaintiff Brown and her companions" on January 29, 2018, such allegations are

7   insufficient since Plaintiffs fail to specifically allege that the insults included any threats of

8   violence.  ECF No. 16 ¶ 45.  Moreover, Plaintiffs' vague attempt to allege that they reasonably

9   believed that they would be subjected to violence in light of Defendants' actions is similarly

10   deficient.  In fact, Plaintiffs' vague allegation that the unnamed deputy sheriffs actions made

11   Plaintiff Brown and her companions feel "fearful and anxious and concerned for their personal

12   safety" in light of knowing that "unarmed black and brown young men have been shot and killed

13   by Sheriff's deputies" is an unreasonable inference that need not be taken by this Court.  *Hartman*,

14   536 F.3d at 1055.  This is particularly true since Plaintiff Brown is admittedly female and since

15   Plaintiffs do not allege that her unnamed companions were "black or brown young men."  ECF

16   No. 16 ¶ 46.  Ultimately, in light of these failures and Plaintiffs' failure to allege any valid Section

17   1983 claims as outlined above, Plaintiffs' Bane Act claim fails as a matter of law and should be

18   dismissed.

19        **3.**     **Plaintiffs' Negligence Claim Fails because it is Impermissibly Vague and for the Same Reasons Their Section 1983 Claims Fail.**

20

21         Finally, Plaintiffs' sixth cause of action for negligence alleges that unspecified defendants

22   breached a duty of care owed to plaintiffs "to hire, train, supervise and discipline SCJSO officers

23   so as to not cause harm to plaintiffs and to prevent violations of plaintiffs' constitutional, statutory

24   and common law rights."  ECF No. 16 ¶ 88.  To properly plead a claim for negligence, Plaintiffs

25   must show that Defendants "had a duty to use due care, that [they] breached that duty, and that the

26   breach was the proximate or legal cause of the resulting injury."  *Hayes v. County of San Diego*, 57

27   Cal.4th 622, 629 (2013).

28         Here, Plaintiffs fail to give Defendants sufficient notice of what specific facts their

1    negligence claim is based on.  *See Starr*, 652 F.3d at 1216 (holding that in order for an allegation

2    to be "entitled to the presumption of truth . . . [it] must contain sufficient allegations of underlying

3    facts to give fair notice and to enable the opposing part to defend itself effectively").  For example,

4    although Plaintiffs allege that Defendants "have a duty of care to hire train, supervise and

5    discipline SCJSO officers" to prevent constitutional violations, they fail to allege which

6    constitutional violations this claim is based on, what specific actions attributable to Defendants

7    resulted in a specific constitutional violation and what actions any named Defendant or the Doe

8    defendant deputy sheriffs engaged in that led to the specific violation this claim is based on.  It is

9    also not clear what duty Plaintiffs allege were owed to them and what resulting injury occurred as

10   a result of this breach.  For example, although some Plaintiffs allege that they felt "fearful and

11   anxious and concerned for their personal safety" on January 29, 2018, it is unclear what injury they

12   actually suffered as a result of said fear and anxiety.  In light of the failure of Plaintiffs Section

13   1983 claims, Defendants doubt that Plaintiffs' can properly amend this claim and therefore

14   respectfully request that this claim be dismissed with prejudice.

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS FIRST AMENDED COMPLAINT – Case No. 2:18-CV-00591-KJM-AC

# V.  CONCLUSION

Ultimately, as Defendants originally stated, Plaintiffs' allegations in this matter raise one simple issue; the reasonableness of the SJCSO's efforts to ensure security and peaceable operations at the San Joaquin Superior Courthouse.  Although one of Plaintiffs' stated desires is to increase public awareness of various social justice issues, such as the violence and the alleged "racial equality in the criminal justice system," this does not appear to be the proper action to further their stated goals since their characterization of defendants' simple exercise of courthouse security do not give rise to any valid claims.  Accordingly, in light of the above and Plaintiffs' repeated failure to allege allegations that state valid claims for relief, Defendants respectfully request that this motion be granted in full and leave to amend denied.

DATED:  August 27, 2018

BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation


By: /s/ GREGORY B. THOMAS, ESQ.
GREGORY B. THOMAS, ESQ.
TEMITAYO O. PETERS, ESQ.
Attorneys for Defendants SAN JOAQUIN
COUNTY, STEVE MOORE, DAVE OLIVER,
JOE PETRINO

28162\785888

# Exhibit A



**Boornazian,**
**Jensen &**
**Garthe**
A Professional Corporation

555 12th Street, Suite 1800
Oakland, CA 94607
Telephone: 510.834.4350
Facsimile: 510.839.1897
Website: www.bjg.com

**Temitayo O. Peters**
opeters@bjg.com

August 22, 2018

**Mailing Address**
P.O. Box 12925
Oakland, CA 94604-2925

<u>Via E-Mail/U.S. Mail</u>
Ms. Yolanda Huang, Esq.
475 14th Street, Suite 500
Oakland, CA 94612
yhuang.law@gmail.com

RE:     ***Black Lives Matter-Stockton Chapter vs. San Joaquin County Sheriff's Office, et al.***
        U.S. District Court, Northern District of California Case No. 2:18-cv-00591-KJM-AC
        Clients:          County of San Joaquin, et al.
        Claimant:         Black Lives Matter-Stockton Chapter
        Our File No.:     SJC 28162

Dear Ms. Huang:

We have completed our review and investigation of the allegations contained in Plaintiffs' First Amended Complaint ("FAC") in this matter.  Based on our analysis and review of applicable case law, we believe that Defendants have a good faith basis for filing a motion to dismiss Plaintiffs' FAC pursuant to Rule 12(b)(6) of the Federal Rules of Procedure for failure to state a claim.

As a result, I am writing to comply with Judge Mueller's requirement that Defendants meet and confer prior to filing their motion.  Dkt. No. 3-1 at 4.  Per Judge Mueller's standing order, moving parties are required to certify that meet and confer efforts have been exhausted and must provide a summary to the court of the meet and confer efforts.

**Outline of Defendants' Intended Motion to Dismiss Plaintiffs' FAC**

Defendants' intended motion to dismiss Plaintiffs' FAC will address the following substantive issues:

> **1.     Plaintiffs' FAC Fails to State Any Valid Claims.**

First, Defendants intend to argue that all of the claims in Plaintiffs' FAC fail to state a valid claim for relief.  Defendants will argue that Plaintiffs' First Amendment claim fails as a matter of law because Plaintiffs admit that they merely went to the courthouse to show "organized support," which is not a protected activity under the First Amendment.  *See* Dkt. No. 15 at 4.  Defendants will also argue that Plaintiffs' Sixth Amendment Claim fails as a matter of law because the Supreme Court has unequivocally stated that the public does not have a constitutionally protected right to attend pretrial criminal proceedings, particularly when there is a history of disruptive behavior, as there is here.  *Gannett Co. v. DePasquale*, 443 U.S. 368, 382, fn. 9 (1979).  *See*

A–1

Yolanda Huang, Esq.
August 22, 2018
Page 2

*also, e.g. Illinois v. Allen*, 397 U.S. 337, 343 (1970) (stating "[i]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country.  The flagrant disregard in the courtroom of elementary standards of proper conduct should not be and cannot be tolerated.").  This claim also fails because Plaintiffs do not allege that any of the named Plaintiffs were actually prevented from attending a scheduled criminal court hearing on either date.  *Cf.* Dkt. No. 16 ¶¶ 24-25.

Next, Defendants will argue that Plaintiffs' Fourteenth Amendment claim fails because Plaintiffs waived their equal protection claim by failing to re-allege it in their FAC and that their due process claim lacks sufficient supporting factual allegations.  *See, e.g. Chubb Custom Ins. Co. v. Space Sys.*, 710 F.3d 946, 974, fn. 15 (9th Cir. 2013) (finding that when a plaintiff failed to re-allege claims dismissed with leave to amend, he abandoned and waived these claims).  Since Plaintiffs' claims under the First, Sixth and Fourteenth Amendments fail as a matter of law and Plaintiffs fail to allege any form of excessive force on either October 30, 2017 and January 29, 2018 (collectively, "subject incidents"), Plaintiffs' state law claims also fail.  As a result, Defendants intend to argue that leave to amend should be denied since further amendment would be futile for the reasons stated above.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

###    2.    Plaintiffs' FAC is Still Too Vague to Impose Municipal and Supervisory Liability.

Second, in granting Plaintiffs' FAC, the Court advised Plaintiffs that any amended complaint would need to "distinguish the named defendants by explaining what alleged wrongdoing is attributable to each; better differentiate which claims pertain to the October 30 incident, the January 29 incident or both; and add factual allegations that plausibly show the alleged wrongdoing was part of a County-wide practice, custom or failure to train." Dkt. No. 15 at 8. *See also Ashcroft v. Twombly*, 550 U.S. 544 (2007); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Here, Plaintiffs' FAC fails to comply with the Court's order granting Defendants' motion to dismiss their original complaint.  Although Plaintiffs' FAC seems to suggest that Defendants Petrino and Oliver (collectively, "supervisory Defendants") were only involved in the October 30 incident, instead of clearly identifying which claims are attributable to this incident, Plaintiffs have again asserted their claims in such a way that the supervisory Defendants are forced to speculate and ultimately defend against all of Plaintiffs' claims.  *See Iqbal*, 556 U.S. at 677-80.  However, even if Plaintiffs had clearly alleged which constitutional violations allegedly occurred during the October 30 incident, supervisory liability cannot be imposed upon the supervisory Defendants because all of Plaintiffs' claims fail as a matter of law for the reasons stated above.  Plaintiffs' claim against Defendant San Joaquin County similarly fails on this basis and because the irrelevant and isolated allegations concerning Defendant Moore's alleged interference with coroner's reports are insufficient to establish a County-wide practice, custom or failure to train under *Monell*.  *See also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Yolanda Huang, Esq.
August 22, 2018
Page 3


### 3.      Defendants are Immune from Suit Under the Eleventh Amendment.

Finally, States are immune from 42 U.S.C. § 1983 ("Section 1983") suits under the Eleventh Amendment of the U.S. Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). Although local government officials can be held liable for Section 1983 claims under *Monell*, the Supreme Court has held that they are entitled to Eleventh Amendment immunity when they are acting "as state agents with final policymaking authority over the complained-of actions." *McMillian v. Monroe County*, 520 U.S. 781, 784-85 (1997). To determine whether a local government official is entitled to Eleventh Amendment immunity as a state actor, a court must consider whether the official is representing the State or the county when engaging in particular function, while analyzing any state law applicable to defining that function. *Id.* at 785-86.

Here, the subject incidents took place within a San Joaquin Superior Courthouse and while San Joaquin County Sheriff's Office ("SJCSO") deputies were engaged in providing court-related services under Sections 69926 and 72115 of the California Government Code. Indeed, Plaintiffs actually admit that they believe that "additional numbers of [s]heriffs' deputies" were at the courthouse on both dates on Judge Garber's request and "in anticipation of the court's prepared negative rulings," which seems to be supported by the numerous news articles reporting on disruptions caused by Plaintiff Black Lives Matter-Stockton Chapter's members during various municipal functions. Dkt. No. 16 ¶ 48.

Since the California Government Code gives the State "sole responsibility for the funding of court operations," which includes court security, Defendants intend to argue that all of the SJCSO deputies involved in the subject incidents were acting as State agents and are thus entitled to Eleventh Amendment immunity from Plaintiffs' damages claims. Cal. Gov. Code §§ 77003; 77200. *See also Rojas v. Sonoma County*, 2011 U.S. Dist. LEXIS 122276, *10-11 (N.D. Cal. 2011) (unpublished) (granting a deputy Eleventh Amendment immunity for providing courtroom security services). *See also Hawkins v. Comparet-Cassani*, 1999 U.S. Dist. LEXIS 4473, *17-20 (C.D. Cal. 1999) (unpublished) (same) *and Scocca v. Smith*, 912 F.Supp.2d 875, 883-84 (N.D. Cal. 2012) (holding that a sheriff was entitled to Eleventh Amendment immunity for granting and denying concealed weapons licenses).

**Conclusion**

Defendants' current deadline for filing a responsive pleading to Plaintiffs' FAC is August 27, 2108. Although Defendants are confident in the good faith basis for filing a motion to dismiss, as outlined above, they are willing to consider any counter arguments from Plaintiffs before filing their intended motion. **If Plaintiffs are aware of any legal authorities that counter**

Yolanda Huang, Esq.
August 22, 2018
Page 4

**Defendants arguments, please advise as soon as possible** to give Defendants ample time to prepare their motion by the current deadline, if necessary.

If Plaintiffs would like more time to meet and confer regarding Defendants' intended motion, Defendants would be willing to enter into a stipulation to extend their deadline to respond to Plaintiffs' FAC. **Thus, if Plaintiffs are amenable to this suggestion, please advise no later than 5pm on August 23, 2018 so that we can prepare the necessary stipulation and file it with the Court Friday morning.** However, if we do not receive any response from you by 12pm on August 24, 2018, we will presume that Plaintiffs do not want to meet and confer and Defendants will file their intended motion by their current deadline, August 27, 2018.

Thank you very much for your kind attention to this matter. Please do not hesitate to contact me should you have any questions or concerns regarding the foregoing.

Very truly yours,

BOORNAZIAN, JENSEN & GARTHE

*Temitayo O. Peters*

Temitayo O. Peters
Attorney for the San Joaquin County Defendants

TOP
28162\785944

4

A–4

# Exhibit B

# YOLANDA HUANG

ATTORNEY AT LAW

Date: August 24, 2018

Gregory Thomas
Temitayo O. Peters
Boornazian, Jense & Garthe
555 12th Street, Suite 1800          Via email: gthomas@bjg.com
Oakland, CA 94607                               opeters@bjg.com

Re: BLM-Stockton Chapter vs. San Joaquin County Sheriff's Office

Dear Ms. Peters and Mr. Thomas,

My understanding of requirements to meet and confer is to have a discussion around genuine issues that are contained in the case at hand.   Your letter of August 22, 2018, emailed shortly before midnight on Wednesday does not seem to be in the spirit of engaging in dialogue as you have clearly indicated your intent to proceed with a 12(b)6 motion.

As with your last meet and confer letter, you continue to cite to cases which have completely inapposite fact patterns and cherry pick dicta.  No where do you address or discuss the gravamen of the facts in the pending case.   Trying to squeeze dicta and holdings into inapposite fact patterns is akin to Cinderella's sisters trying to squeeze into the glass slipper.  It does not work.  Neither of the two United States Supreme Court cases you cited, *Gannet Co. v. DePasquale* nor *Illinois v. Allen* apply to the present case. I find it further disturbing that you clearly ignore the law that support plaintiffs.  The case law on 6th amendment rights is well developed and extensive.

For example:
1.  *Presley v. Georgia* (2010) 558 U.S. 209, 215, "Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials."

2.  *Presley v. Georgia* (2010) 558 U.S. 209, 212  "The Court has further held that the public trial right extends beyond the accused and can be invoked under the First Amendment. Press–Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (Press–Enterprise I). This requirement, too, is binding on the States." [emphasis added]

B-1

3.  *U.S. v. Withers* (9th Cir. 2010) 618 F.3d 1008, 1016
"A district court violates a defendant's right to a public trial when it totally closes the courtroom to the public, for a nontrivial duration, without first complying with the four requirements established by the Supreme Court's Press Enterprise and Waller decisions. See Waller, 467 U.S. at 48, 104 S.Ct. 2210; United States v. Ivester, 316 F.3d 955, 959 (9th Cir.2003) (holding that trivial closures do not violate the Sixth Amendment); United States v. Sherlock, 962 F.2d 1349, 1357 (9th Cir.1992) (holding that partial closures are subject to less stringent requirements)."

I do not intend to respond to all the errant cases you cited, which do not apply to plaintiffs' claims.  If you find a case, (and I would wager good money that there are none as I have found none, that holds that the state can selectively exclude members of one particular organization based upon that organization's exercise of free speech, namely criticism of the state) I would consider that case.  But please do not continue to cite cases for dicta based upon inapposite facts and ignoring the extensive existing case law on the subject.

Regarding your request to delay the deadline for your filing of a 12b6 motion, your client refused to grant my client 4 days of additional time to file an amended complaint and yet repeatedly requests extensive delays.  My clients are interested in securing their rights to safely and without interference, attend public hearings.

Three of my clients, Dionne Smith Downs, Denise Friday and Lareesha Brown have had family members killed by Stockton police/sheriffs.  All three are African American women.  They have a very deep and personal interest in seeking the equal treatment.

Your clients' continued refusal to acknowledge my clients' constitutional rights and the clear holding of the law regarding the public's right to access under the 6th Amendment highlights the racism and animosity which the San Joaquin County  Sheriff's Department harbors for African Americans.

Plaintiffs have court hearings coming up in September and October.  I would only agree to further meet and confer if your client will stipulate that there will be no effort to prevent my clients from accessing courtrooms and no harassment of my clients in the courthouse unless my clients' conduct rise to the level for probable cause for criminal arrest or your client receive a direct court order to do so.  If you are interested, I can draft a proposed stipulation today.   If your client continues to block access, or harass my clients before or during court hearings, I will apply to the court for emergency relief.


Sincerely,



Yolanda Huang

B−2

# Exhibit C



**Boornazian,**
**Jensen &**
**Garthe**
A Professional Corporation

555 12th Street, Suite 1800
Oakland, CA 94607
Telephone: 510.834.4350
Facsimile: 510.839.1897
Website: www.bjg.com

**Temitayo O. Peters**
opeters@bjg.com

August 24, 2018

**Mailing Address**
P.O. Box 12925
Oakland, CA 94604-2925

VIA E-MAIL/U.S. MAIL
Ms. Yolanda Huang, Esq.
475 14th Street, Suite 500
Oakland, CA 94612
yhuang.law@gmail.com

RE:     ***Black Lives Matter-Stockton Chapter vs. San Joaquin County Sheriff's Office, et al.***
        U.S. District Court, Northern District of California Case No. 2:18-cv-00591-KJM-AC
        Clients:          County of San Joaquin, et al.
        Claimant:         Black Lives Matter-Stockton Chapter
        Our File No.:     SJC 28162

Dear Ms. Huang:

I am writing to respond to your letter sent earlier today in response to Defendants' August 22, 2018 meet and confer letter.  As you know, pursuant to Rule 15(a) of the Federal Rules of Procedure, Defendants only have 14 days from the filing of an amended pleading to respond. Since Plaintiffs filed their First Amended Complaint ("FAC") on August 13, 2018, we have had to analyze and investigate Plaintiffs' new allegations and conduct research to evaluate potential defenses, which were outlined in our August 22, 2018 meet and confer correspondence to you.

In light of the short turnaround and mindful of the number and complexity of legal issues, in our August 22, 2018 meet and confer letter to you, we *offered* you additional time to prepare a substantive response to the arguments outlined therein and stated that we would stipulate to extend Defendants' deadline to respond to Plaintiffs' FAC if you desired additional time to meet and confer.   Your responsive letter sent earlier today states:

> I would only agree to further meet and confer if your client will stipulate that there
> will be no further effort to prevent my clients from accessing courtrooms and no
> harassment of my clients in the courthouse unless my clients' conduct rise [sic] to
> the level for probable cause for criminal arrest or your client receive [sic] a direct
> court order to do so.

The purpose of our meet and confer letter was to engage in a meaningful discussion of the substantive nature of Defendants' arguments that Plaintiffs' FAC fails to state a cause of action as a matter of law.  It is apparent from your letter sent earlier today that we disagree on the application of the Sixth Amendment case law to this matter.  *Compare Presley v. Georgia*, 518 U.S. 209 (201) (dealing with a defendant's Sixth Amendment rights <u>at trial</u>) *with Gannett Co. v.*

C-1

Yolanda Huang, Esq.
August 24, 2018
Page 2

*DePasquale*, 443 U.S. 368 (1979) (dealing with a defendant's Sixth Amendment rights during preliminary hearings).  You did not respond to any of the other substantive arguments outlined in our August 22, 2018 letter.  As to the condition you imposed on your willingness to further meet and confer with us on Defendants' intended motion, Defendants deny any unconstitutional conduct.  Moreover, the conditions you impose lack foundation and are substantively and procedurally improper in connection with a good faith meet and confer prior to filing a motion to dismiss.

If you do not wish to meet and confer further regarding the substantive nature of Defendants' intended motion to dismiss, we will move forward with filing a motion to dismiss.  Contrarily, if you would like to meet and confer further about the substantive nature of Defendants' intended motion, please let us know and we will be happy to stipulate to extend Defendants' deadline for filing a responsive pleading to Plaintiffs' FAC.  Please note that if the Court does not enter an order extending Defendants' time to respond to the FAC by August 26, 2018, however, we will be forced to file a motion to dismiss in order to preserve Defendants' right to file a dispositive motion in response to Plaintiffs' FAC.  *See* Eastern District Local Rule 143(b).

Thank you very much for your kind attention to this matter.  Please do not hesitate to contact me should you have any questions or concerns regarding the foregoing.

Very truly yours,

BOORNAZIAN, JENSEN & GARTHE

*Temitayo O. Peters*

Temitayo O. Peters
Attorney for the San Joaquin County Defendants

TOP
28162\786130

2

C-2

| | |
|---|---|
| **From:** | Yolanda Huang |
| **To:** | Ope Peters |
| **Subject:** | Re: BLM v. SCJSO |
| **Date:** | Friday, August 24, 2018 3:01:08 PM |

Ms. Peters:

In my letter of earlier today:

" I would only agree to further meet and confer if your client will stipulate that there will be no effort to prevent my clients from accessing courtrooms and no harassment of my clients in the courthouse unless my clients' conduct rise to the level for probable cause for criminal arrest or your client receive a direct court order to do so."

Since you appear to be requesting additional time to meet and confer, let me know if you will so stipulate. Otherwise, I will assume you prefer to move foward with a motion.

Thank-you,

--

**Yolanda Huang, Esq.**

475 14th Street • Suite 500 • Oakland • CA • 94612 • Phone:510-329-2140 • Fax:510-580-9410

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

On Fri, Aug 24, 2018 at 2:18 PM, Ope Peters <opeters@bjg.com> wrote:

> Dear Ms. Huang,
>
> Please see the attached correspondence in response to your letter of today's date.  Thank you.
>
> Sincerely,
>
> Temitayo O. Peters, Esq.
>
> BOORNAZIAN, JENSEN & GARTHE
>
> 555 12th St., Suite 1800
>
> Oakland, CA  94607

(510) 834-4350, Ext. 142

(510) 839-1897 (fax)

opeters@bjg.com

The information contained in this e-mail message is intended for the confidential use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. Recipients should not file copies of this e-mail with publicly accessible records.  If you are not an addressee or an authorized agent responsible for delivering this e-mail to a designated addressee, you have received this e-mail in error.  If you have received this e-mail in error, please notify the sender immediately at (510) 834-4350 and delete this e-mail.

**From:** Yolanda Huang [mailto:yhuang.law@gmail.com]
**Sent:** Friday, August 24, 2018 10:07 AM
**To:** Gregory B. Thomas; Ope Peters
**Subject:** BLM v. SCJSO

Please see attached.

--

Yolanda Huang, Esq.

475 14th Street • Suite 500 • Oakland • CA • 94612 • Phone:510-329-2140 • Fax:510-580-9410

<u>Confidentiality Notice</u>: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

C-4