LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
Email: yhuang.law@gmail.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

BLACK LIVES MATTER-STOCKTON
CHAPTER, an unincorporated association; and
DIONNE SMITH-DOWNS, individually and on
behalf of others similarly situated.

Plaintiffs,

vs.

SAN JOAQUIN COUNTY SHERIFF'S
OFFICE, SAN JOAQUIN COUNTY, STEVE
MOORE, DAVE OLIVER (OLIVR), JOE
PETRINO, DOES 1-50.
                    Defendants.

No. 2:18-cv-00591-KJM-AC

OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS

Date: Dec. 7, 2018
Time: 10 a.m.
Courtroom: 3, 15th Floor

Hon. Kimberly J. Mueller

## 1. STATEMENT OF FACTS

Plaintiffs First Amended Complaint ("FAC") added additional plaintiffs, including Denise
Friday, a Board member of Black Lives Matter-Stockton Chapter (hereinafter "BLM-Stockton"), and
Lareesha Brown and Kenneth Marbley who were criminally charged for protesting police violence
and killings while participating in a BLM-Stockton organized protest. All three, and the original
individual plaintiff, Dionne Downs Smith, were present at the Stockton courthouse on the dates of the
two incidents. Denise Friday had a son shot multiple times and killed by the Stockton Police. In
Dione Smith Downs' son's death, Stockton police and San Joaquin County Sheriffs were involved in
the shootings. The FAC states that BLM-Stockton came together on the dates of the two incidents, to
provide court support, an activity organized and under the auspices of BLM-STOCKTON because

BLM-STOCKTON believes that the presence of BLM-Stockton Chapter members "in the court room improves racial equality within the criminal justice system and encourages fairer outcomes for these criminal prosecutions of BLM-Stockton protesters by increasing public awareness and scrutiny of the criminal justice system and the issues which BLM-Stockton Chapter advocates for.  BLM-Stockton's court support work also communicates to the Court, the district attorney and police, as well as members of BLM-Stockton and its supporters that BLM-Stockton's is serious about its exercise of free speech and that those who support these goals and are arrested during the exercise of free speech activities will be supported through the criminal prosecution process."

The FAC pleads that Sheriff, defendant Moore, who has the ultimate power and authority to develop policies, directives and practices for the San Joaquin County Sheriff's Office, developed and implemented a policy and practice of supporting police officers and deputies from accusations of wrong doing, and that this support included protecting officers from accusations of excessive force because Sheriff Moore believes that "the police do not 'mean to kill anyone.' "  The FAC included examples of conduct by Sheriff Moore, such as defendant Moore's interference with pathologist reports to change the cause of death when an officer involved shooting was the subject from "homicide" to "accident".  As a result of this general policy protecting and supporting police officers, the Sheriff's Office had a specific policy of hostility toward those who criticize peace officers, including BLM-STOCKTON, resulting in the constitutional malfeasant actions taken by the defendant Sheriff's Office against plaintiffs.

## 2.     STANDARDS OF REVIEW

A plaintiff's obligation under Rule 8(a) is to present a complaint containing a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

In considering a motion under Fed. Civ. Pro. §12b6, , a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

3.   **DEFENDANTS' ARGUMENT OF IMMUNITY UNDER THE ELEVENTH AMENDMENT IS BASED UPON REPEALED AND OUTDATED STATE STATUTES.**

Defendants' cites superseded caselaw to support their assertion that they are protected by immunity under the eleventh Amendment.  The unpublished opinion defendants cite, *Rojas v. Sonoma County,* (N.D. Cal., Oct. 21, 2011, No. C-11-1358 EMC),  was decided one year before the California legislature overhauled the applicable statutes and repealed the statute on which the court in *Rojas* premised its holding.  In *Rojas v. Sonoma County,* (N.D. Cal., Oct. 21, 2011, No. C-11-1358 EMC), the court applied the 11th amendment immunity to Sheriffs' deputies who provided court security, holding that under California state law, Sheriff's deputies were agents of the State, and specifically referring to Gov't Code §§ 77200, 72115 and 77003. The district court

in *Rojas* stated it was following the directive laid out by the Supreme Court telling courts to develop their "… understanding of the actual function of a governmental official…" by examining "…the definition of the official's functions under relevant state law." *McMillian v. Monroe County, Ala.* (1997) 520 U.S. 781, 786. Unfortunately for defendants, the three California statues examined by the court in *Rojas,* Gov't Code §§72115, 77200, and 77003 have either been repealed or significantly amended. One year after *Rojas* was decided, the California State legislature repealed Gov't Code §72115 and completely altered the manner in which counties and courts assign sheriffs to provide security at local courthouses. These changes include a new framework of statutes, the "Superior Court Security Act of 2012", Gov't Code §69920 et seq. Gov't Code §69926,(b), states that when the sheriff enters into a memorandum of understanding to provide court security does so "on behalf of the county" and "with the approval and authorization of the board of supervisors". Gov't Code §66926(b). Gov't Code§77003(a)(8) was amended to state that the definition "court operations"  is subject to Superior Court Security Act of 2012 "Article 8.5 (commencing with Section 69920) of Chapter 5". Applying the instruction of *McMillian v. Monroe County, Ala.* supra.,  that state law controls, the California legislature's intent is clear that sheriffs are agents of the county, and not agents of the State, as demonstrated by its statutory actions and the language adopted. Post enactment of the "Superior Court Security Act of 2012" there is *no* caselaw, state or federal, which hold that sheriffs who perform court security are agents of the State. *Rojas v. Sonoma County,* supra. has been superseded by statute and the eleventh amendment immunity is not applicable to these defendants.

The other case cited by defendants, also does not support defendants' argument.   In *Hawkins v. Comparet-Cassani* (C.D. Cal. 1999) 33 F.Supp.2d 1244, the court granted quasi-judicial immunity to the Sheriff for using a stun belt on the defendant because, the deputy "…activated the device on the <u>direct order</u> of a judge sitting on the bench. The officer executed the order immediately."[emphasis added]   *Hawkins v. Comparet-Cassani* (C.D. Cal. 1999) 33 F.Supp.2d 1244, 1252.  The fact pattern of Hawkins is not applicable to the present case.  In the present case, there was no direct judicial order instructing defendants to bar plaintiffs' entry into the courthouse, and there was no judicial order instructing defendants to threaten and harass plaintiffs.  Furthermore, the district court in *Hawkins v. Comparet-Cassani, supra.* stated that while the Ninth Circuit has adopted the theory of quasi immunity for individuals carrying out judicial orders on the issue of damages, there is no immunity from injunctive relief.

In the present case, where there was no judicial order for defendants' conduct, Plaintiffs oppose Defendants' motion to dismiss.

4.  **PLAINTIFFS' ALLEGATIONS ARE SUFFICIENT TO ESTABLISH LAIBILITY FOR DEFENDANTS PETRINO AND OLIVER**

In ruling on a motion to dismiss, all allegations of material fact are accepted as true and should be construed "in the light most favorable to the plaintiff." *Perfect 10, Inc. v. Visa Inter'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007) (internal quotation marks omitted). Ambiguity must also be resolved in Plaintiffs' favor. *Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir. 1973).   On review, the courts " accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs." *In re Gilead Sciences Securities Litigation* (9th Cir. 2008) 536 F.3d 1049, 1055.

Defendants seek dismissal of sheriff officers Oliver and Petrino because defendants argue that plaintiffs failed to allege that "Oliver and Petrino were directly involved in the incident that occurred on January 29, 2018."  Accepting the facts pled in the FAC, which states that officers Oliver and Petrino were personally and actively involved, including being present on October 30, 2017, (DKT 16, ¶¶ 24, 25) engaged in:

 "supervising and directing" the sheriff's deputies in the complained of actions, and personally directing sheriff deputies to block plaintiffs' entrance into the courthouse.  The FAC further pleads that that defendants Oliver and Petrino were "officers and employees acting under the color of law, under color of authority and in the scope of their employment as Command and Supervisory Personnel of the San Joaquin County Sheriff's Office. Additionally, upon information and belief, one or more of these Defendants failed, with deliberate indifference to Plaintiffs' and class members' rights, to adequately train and supervise SJCSO sheriff's deputies and staff who were involved in violating the rights of the Plaintiffs and class members on October 30, 2017 and January 29, 2018."  (Dkt 16, ¶ 27)

In reviewing a motion to dismiss, the court will " 'presume that general allegations embrace those specific facts that are necessary to support the claim.' " *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 803.  The Ninth Circuit has held that a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continuing litigation." *Starr v. Baca*, 652 F.3d  1202, 1216) (9th Cir. July 25, 2011)  Discovery in this

case has only begun.  Presumably, defendants are not objecting to the allegations against defendants Oliver and Petrino regarding the incident of October 30, 2017, and are only seeking to dismiss regarding claims pertaining to the incident of January 29, 2018.  The two incidents, October 30, 2017 and January 29, 2018 are a two-step, and not separated incidents.  Since defendants do not seek dismissal for the October 30, 2017 incident, defendants are not challenging the allegations that Petrino and Oliver are supervisory and command officers, who train, supervise and direct deputies, and are responsible for implementing the policies of the San Joaquin County Sheriff's Office.  Since defendants have alleged that the actions taken are part and parcel of an overarching unconstitutional policy by the Sheriff's Office, the fact that plaintiffs did not plead Oliver and Petrino's specific presence on January 29 2018, due to lack of specific information at the time of the filing of the FAC, is not prejudicial and is not unfair to require defendants to comply with discovery on this issue.

The 9th Circuit only requires "sufficient allegations of underlying facts" to provide "fair notice".  *Starr v. Baca*, supra. at 1216.  Plaintiffs' FAC does that, and these issues in defendants' motion to dismiss would be better addressed to a motion for summary judgment <u>after discovery</u> has been completed.  Plaintiffs have adequately pled liability for both defendants Petrino and Oliver, and on this ground oppose the motion to dismiss.

5.    **PLAINTIFFS' ALLEGATIONS ARE SUFFICIENT TO ESTABLISH LIABILITY FOR DEFENDANT SHERIFF MOORE**

Defendant Moore, the Sheriff, is the individual who has the ultimate power and authority to develop policies, directives and practices for the San Joaquin County Sheriff's Office, and plaintiffs have pled that he developed a policy of protecting police officers including Sheriff deputies from accusations of wrong doing and use of excessive force and implementation of this policy manifested in hostility towards  those who criticized the police and sheriff.  The FAC pleads that this hostility directed at plaintiffs and BLM-Stockton, was for the purpose of implementation of adopted policy. Plaintiffs further pled that as the case progressed, the policy of protecting police and sheriff was office demonstrated by the increasing number and presence of sheriff deputies at court hearings involving BLM-Stockton protesters, with intensified activity by Sheriff's deputies resulting in the blockage preventing plaintiffs from entering the courthouse, on October 30, 2017 and harassment and threats directed at plaintiffs on January 29, 2018.

Defendants pick and choose facts, and conveniently ignore facts contained in the FAC which contradict their argument.  On one hand they complain that there are insufficient facts to demonstrate

1  a policy and practice and then complain that plaintiffs included facts regarding defendant Moore's

2  interference with pathology reports (Dkt. 17, p. 8, L. 11-13).  Defendant Moore's interference with

3  pathology findings in coroner's reports is an example of the execution of the Sheriff's ongoing policy

4  and practice to protect police and sheriff deputies.  The purpose of including the details of Sheriff

5  Moore's alteration of pathology findings is to demonstrate the overall policy and the extent of the

6  conduct defendant MOORE actively engaged to carry out his policy of protecting San Joaquin

7  Sheriff's deputies from accusations of wrong doing.  (Dkt. 16 § 40).  The alterations of pathology

8  reports to indicate an "accident" rather than a "homicide" when the shooter was a sheriff's deputy

9  accused of "excessive violence and use of force," demonstrates the wide spread and broad practices

10 by defendant Sheriff's Office's to implement and execute its official policy of protecting police and

   sheriffs from criticism for sheriff and police use of excessive force.

11      Next defendants complain that the two incidents described in the FAC are "sporadic" or

12 "isolated" and request dismissal on the grounds that the facts pled do not show a policy of  "hostility

13 and antipathy" towards those who criticize the department.  Dkt. 17 P. 9, l. 2-5.   To support this

14 argument, defendants cite *In Re Gilead Securities Litigation* 536 F3d 1049. (which defendants refer

15 to as "Hartman")  *In Re Gilead, supra*. does not support defendants' argument.  *In Re Gilead* was a

16 class action securities fraud case, in which the trial court dismissed without leave to amend following

17 a Fed. R. Civ. P. §12(b)6 motion.  In *in Re Gilead*, supra. the primary issue was the trial court's

18 "incredulity" regarding the loss causation pled, and on that basis held that the plaintiffs failed to

19 sufficiently allege loss causation.  *In Re Gilead*, supra,  536 F3d 1056.  There was no discussion of

   "sporadic" or isolated incidents vis-à-vis a governmental policy.  The 9th Circuit reversed.

20      The second case cited by defendants, *Trevino v. Gates* 99 F.3d 911 (9th Cir. 1996) is equally

21 inapposite.   Firstly, the decision in *Trevino*, Id. followed a summary judgment motion, and not a

22 Fed. R. Civ. Pro. §12(b)6 motion.  Secondly, the court in *Trevino* stated in *dicta*, that absent a formal

23 governmental policy, proof of a policy cannot be predicated on isolated or sporadic incidents.

   *Trevino*, supra at 918.

24      In *Trevino*, the plaintiff sued the Los Angeles City Council for indemnifying the punitive

25 damages of police officers accused of excessive force.   The court held that because there was *no*

26 *formal governmental policy*,  dismissal was appropriate because the plaintiff failed to demonstrate a

27 custom and policy.  The 9th Circuit affirmed hold that *the pattern* of settling excessive force cases

28 was more "reflective of normal municipal claims adjusting." *Trevino*, supra at 920.  It should be

noted that the court in *Trevino* came to its decision pursuant to a summary judgment evaluation determining that no formal policy existed.  The court in *Trevino* did not hold that the fact pattern in Trevino constituted a "sporadic " or "isolated" incident, or identify what type of fact pattern would constitute a "sporadic " or "isolated" incident.  The holding in Trevon,  the City of Los Angeles municipal claims settlement practice did the trial court in *Trevino*, supra at 920.  was that the *pattern* of City of Los Angeles conduct did  substantiate a claim of custom and policy.

Furthermore, of all the cases cited by *Trevino,* supra at 918, in its *dicta* regarding isolated or sporadic incidents, none were decided at the pleading stage and none were rulings on a Fed. R. Civ. P 12(b)6 motion.  See *Bennett v. City of Slidell* (5th Cir. 1984) 728 F.2d 762, 770  (trial verdict for defendants upheld where plaintiff was unable to show that the City treated others like him); *Meehan v. County of Los Angeles* 856 F. 2d 102 (9th Cir. 1988) (directed verdict following trial); *Davis v. City of Ellensburg* 869 F2d 120 (9th Cir. 1989) (dismissal following summary judgment motion).  Finally, the holding in *Trevino* was disapproved by in *Lowry v. City of San Diego* 818 F.3d 840, 855 (9th Cir. 2016).  In *Lowry*, the defendant City argued that plaintiff's "single incident" was an insufficient basis for Monell liability.  The 9th Circuit disagreed, holding that Trevino only applies to claims of "improper custom" based upon "isolated or sporadic incidents" and is inapplicable where there is "an official municipal policy."

Defendants' attempt a factual dispute at the pleading stage by asserting that the two events are separate and isolated incidents rather than a continuation of a formal policy. Dismissal based at the pleading stage is inappropriate, and none of the cases cited by defendants support their argument.

5. **PLAINTIFFS WERE AT SAN JOAQUIN COUNTY COURTHOUSE TO EXPRESS A COLLECTIVE POINT OF VIEW.**

Defendants attempt to demean Black Lives Matter and its organized court support by asserting that BLM-Stockton's activities were to akin "walking down a street or meeting one's friends at a shopping mall". Dkt. 17 p. 11, L. 13-16, and therefore, does not qualify as free speech activities.  Defendants completely ignore the pleadings which state that plaintiffs' activities are specifically linked to their values and objectives of improving "racial equality within the criminal justice system"; encouraging "fairer outcomes for criminal prosecutions of BLM-Stockton protesters by increasing public awareness; and scrutiny of the criminal justice system for racial bias.   Plaintiffs Dionne Smith-Downs and Denise Friday are two mothers whose sons each received the death penalty from a hail of bullets shot by Stockton police and San Joaquin sheriffs.  Plaintiffs' FAC states that the

wearing of earrings and clothing that spell out Black Lives Matter is important because it identifies the individuals as members of the Black Lives Matter  and the attendance of Black Lives Matter members at public court hearings is for the purpose of  bearing witness to their efforts to seek justice. This is the essence of political free speech.

Contrary to defendants' assertion that no constitutionally deficient malfeasance took place because defendants were permitted to wear their BLM-identifying jewelry and clothing, such an argument makes a mockery out of the long history where symbols of a membership, such as the Jewish star, were used as a starting point for selective discrimination.  Plaintiffs pled that defendants used plaintiffs' wearing of BLM jewelry, insignia and t-shirts as a means to identify and exclude plaintiffs from a public hearing on October 30, 2017, and to harass and threaten plaintiffs on January 29, 2018.  The issue is not, as defendants argue, whether plaintiffs were permitted to wearing identifying jewelry and clothing, the issue is that defendants based their discrimination on plaintiffs' wearing of said identifying jewelry and clothing, by denying only those people wearing BLM identifying jewelry and clothing access to a public courthouse and by harassing and threatening only those individuals associating with BLM or wearing BLM identifying jewelry and clothing.

Speech is not just the mechanics of physically producing sounds and sound patterns, but the essence of speech is the use of symbols to convey a message.  And that message can be conveyed from an image, such as the NFL football players kneeling during the national anthem, or the physical presence of Black Lives Matter members at the courthouse in tee shirts proclaiming Black Lives Matter, when their own are on trial for protesting the police shooting of an unarmed civilian.  For defendants to cite, out of context, *City of Dallas v. Stanglin* (1989) 490 US 19, which held that strangers who dance at a public dance hall are not engaged in protected First Amendment "expressive activity", a completely inapposite case about a city ordinance imposing age limits at public dance halls, is cheap deprecation of the important and significant social issues raised by BLM-Stockton. Plaintiffs' activities are clearly protected by the First Amendment.  The First Amendment protects the right to associate for the purpose of engaging in activities designed to promote and express values. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647–48 (2000); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18, (1984).  In *Boy Scouts of Am. v. Dale,* the court held that Boy Scouts engage in expressive activity because the purpose of their activities is values based.  In the same way, plaintiffs' activities are clearly protected expressive activity because the motivating factor, is also values based. " It seems indisputable that an association that seeks to transmit such a system of values engages in expressive

activity." *Boy Scouts of America v. Dale* (2000) 530 U.S. 640, 650  Plaintiffs seek to transmit a system of values, namely that the lives of Black people are valued as equal to the lives of others, and that the treatment of Black people within the San Joaquin County justice system should be equal to the treatment meted out to others.  No black man should suffer the death penalty for having a cell phone in his hand.  That, in essence is the message of Black Lives Matter.

Defendants' motion to dismiss Plaintiffs' first cause of action for failure to state a claim under the First Amendment should be overruled.

6.    **THE PUBLIC HAS THE RIGHT TO ATTEND A PUBLIC TRIAL PURSUANT TO THE 1ST AND 14TH AMENDMENTS.**

Defendants presuppose that only a defendant has the right to a public trial.  Not so.  It has been held that the right of free speech and the right to assembly includes the right of access " to places traditionally open to the public, as criminal trials have long been" *Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S. 555, 577.  The denial of access to plaintiffs, who are not criminal defendants, violated the constitutional right to free assembly.  *Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S. 555, 577.  And absent an overriding interest, "The trial of a criminal case must be open to the public." *Richmond Newspapers, Inc*. supra at 581.  Defendants' motion to dismiss for failure to state a valid federal claim should be overruled and defendants directed to respond.

7.    **DEFENDANTS VIOLATED PLAINTIFFS LAREESHA BROWN AND KENNETH MARBLEY'S CONSTITUTIONAL RIGHTS TO A PUBLIC TRIAL UNDER THE SIXTH AMENDMENT.**

Defendants advance the idea that merely because plaintiff Brown and Marbley, who are defendants, were afforded the ability to attend a portion of the hearings on October 30, 2017 and January 29, 2018, that no Sixth Amendment violation took place.  This is acrobatics in illogic.  And then defendants cite the wholly irrelevant case of *Illinois v. Allen*, 397 US 337, which held that a disruptive and unruly defendant could be removed from his own criminal trial.  This is obfuscation of the meanest sort.  There are no facts from any angle that even purport the hint of disruptive conduct by plaintiffs or any cause to remove them from the courthouse.

Furthermore, plaintiffs Brown and Marbley's attendance at their criminal hearing does not address their main complaint, which is that court supporters were denied entry into a public courthouse and denied attendance at a public hearing. The right of plaintiffs Brown and Marbley to have a public trial includes the right to have "the public" be admitted and be permitted to observe and

participate.  "We start with the proposition that it is a 'public trial' that the Sixth Amendment guarantees to the 'accused.'  The purpose of the requirement of a public trial was to guarantee that the accused would be fairly dealt with and not unjustly condemned. History had proven that secret tribunals were effective instruments of oppression." *Estes v. State of Tex.* (1965) 381 U.S. 532, 538–539.

Plaintiffs Brown and Marbley had their 6th amendment rights violated on both October 30, 2017 and January 29, 2018.  While the actions by defendants were different, the objectives were the same, which was to prevent and dissuade individuals from volunteering and participating as court support.  On October 30th, court supporters were actively blocked from entering the building.  On January 29, 2018, court supporters were met with harassment and threats aimed at dissuading and curtailing their presence at the public courthouse.  Therefore, Defendants' motion to dismiss for failure to state a valid federal claim should be overruled and defendants directed to respond.

a.      Defendants' Attempt to Insert A Factual Dispute Should be Disregarded

Defendants attempt to have the court make a factual determination unfavorable to plaintiffs, based upon hearsay newspaper articles, is improper and should be disregarded.  For a Fed. R. Civ. P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. Van Winkle v. Allstate Ins. Co., 290 F.Supp.2d 1158, 1162, n. 2 (C.D.Cal.2003).  *Arres v. City of Fresno* (E.D. Cal., Jan. 26, 2011, No. CV F 10-1628 LJO SMS) 2011 WL 284971, at 4.  Ambiguity must also be resolved in Plaintiffs' favor. *Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir. 1973).

**8.  PLAINTIFFS CLAIMS ARE BASED BOTH ON DISCRIMINATION DUE TO THEIR RACE AND THEIR MEMBERSHIP IN BLM-STOCKTON.**

Defendants argue that they cannot discern whether plaintiffs' complaint alleges denial of access to the courthouse based "on their race as opposed to their membership in the organization." Dkt 17 p. 14, l. 6-7, in seeking dismissal of plaintiffs' Fourteenth amendment claims and alternatively argue that plaintiffs' claims under Cal. Civil C. §51.7 fail because the FAC does not identify protected characteristics. Dkt. 17 p. 16 l. 6.  Clearly this argue urges the court to ignore the actual FAC which states that the actions by defendants are discriminatory and constitutionally malfeasant based upon plaintiffs' actual race *and* their membership in BLM-Stockton.

Regarding October 30, 2017, the FAC asserts that only individuals "who were black or brown" were stopped and questioned by defendants."  Dkt 16 ¶43.  Only individuals who were "black and brown" were denied entrance to the courthouse.  Dkt 16 ¶43.  In addition, individuals who were

identified as having participated in previous BLM-Stockton events," and "any individuals with jewelry or clothing that contained the words "black lives matter" were also denied entrance to the courthouse. Dkt 16 ¶43. The FAC plead that plaintiffs are all African Americans, Dkt. 16 p. 18 of 32, L. 17. The FAC states that the individuals who exited the courtroom on January 29, 2018 in the company of plaintiffs , "[t]hese individuals, all of whom are African American, included plaintiffs" Dkt. 18 ¶44. Yet, defendants continually complain that: "Plaintiffs do not allege that her unnamed companions were 'black or brown young men'". Dkt 17, p. 24/39, L. 15. The FAC plead that plaintiffs are also members of BLM-Stockton Dkt 17, p. 24/39, L. 11, 13, 15, 19. Dkt 6, ¶13. BLM-Stockton " BLM-Stockton is composed of and works on behalf of Black and Brown residents of Stockton and San Joaquin County," Dkt. 16 ¶31.

BLM-Stockton is a unique organization that grows out of the institutional racism of our country and our criminal justice system. The constitutional malfeasance on the part of the defendants is both due to plaintiffs' ethnicity as African-Americans, and due to their exercise of their constitutional rights to free speech in seeking social justice. In the present case, being black, and criminal injustice due to institutional racism is not separable. This is the horn of the dilemma both in this case, and in our society at large.

Perhaps this is why defendants repeatedly deny and ignore statements contained in the FAC and assert that plaintiffs have failed to inform them of why they are being sued. It is unclear how much more succinctly and how many more times plaintiffs need to reiterate the fact that they are African Americans, and that as African Americans they were targeted by defendants, and as African American individuals, they have had their constitutional rights violated. Society is complicated and issues cannot be neatly sliced and diced. In the present case, plaintiffs were denied access both on account of their own race, *and* on account of their membership in Black Lives Matter. Both of which plaintiffs have sufficiently pled.

A. Plaintiffs Have Stated a Valid 14th Amendment Claims.

All the individual plaintiffs are African Americans, and the FAC so states (Dkt 16, §17, 28, 19, 20). Plaintiff's FAC states that #Black Lives Matter is a "national activist movement, originating in the African-American community", born of the killing of Trayvon Martin, an African American teenager. Black Lives Matter-Stockton Chapter was founded in August, 2016 following the police murder of Colby Friday, an African American young man. On October 30, 2018, defendants threatened to arrest plaintiffs. Plaintiffs have pled that on January 29, 2018, there was direct

harassment, intimidation and threats.  And plaintiffs, as African Americans know that the threat of arrest carries, for them African Americans, the possibility of the death penalty, immediately imposed. Plaintiffs have stated that there was animus and a motivating reason for defendants' actions based upon their race.  The threat of arrest is a threat to liberty, and for African Americans, the threat of arrest is often a threat to life.  This is the claim, applied to the County of San Joaquin, under the Fourteenth amendment, which paragraph 80 of the FAC articulates.  The overt threats to life and liberty are the substantive due process claims under the Fourteenth Amendment raised by plaintiffs, which are adequately pled in the FAC.  Dkt 16

Plaintiffs Brown and Marbley are seeking racial equality within the San Joaquin County justice system, and a fairer outcome for their criminal prosecution, or their full measure of due process under the 5th Amendment.  Dkt. 17, §38.  Plaintiffs have alleged that the San Joaquin County criminal justice system is systematically less fair to African Americans, and defendants in successfully denying plaintiffs court support was in effect denying plaintiffs their full measure of due process.

## 9.    PLAINTIFFS HAVE PROPERLY PLED A CLAIM UNDER CODE CIV. PROC. §§ 52.1 AND 51.7.

Defendants assert that the FAC is insufficient because it is "unreasonable" for plaintiffs to have been fearful and concerned over their safety, and for this reason have failed to state claims under either  Cal. Civil Code §§52.1 or 51.7.    There is no caselaw supporting defendants' argument, that as a matter of law, it is an "unreasonable inference" for plaintiffs, who are African American, to be fearful of arrest by armed police and sheriff.

Under §51.7, Black Lives Matter is a political affiliation and the affiliation includes race and color.  All the individual plaintiffs are African Americans, and the FAC so states (Dkt 16, §17, 28, 19, 20).  Plaintiff's FAC states that #Black Lives Matter is a "national activist movement, originating in the African-American community", born of the killing of Trayvon Martin, an African American teenager.  Black Lives Matter-Stockton Chapter was founded in August, 2016 following the police murder of Colby Friday, an African American young man.  On October 30, 2018, defendants threatened to arrest plaintiffs.  Plaintiffs have pled that on January 29, 2018, there was direct harassment, intimidation and threats and threats of arrest.  Plaintiffs, as African Americans, know well that the threat of arrest carries, for African Americans, the possibility of a death penalty, immediately imposed.  Plaintiffs have stated that there was animus and a motivating reason for

defendants' actions based upon their race.  Section 51.7 provides a civil remedy, and that is the basis of the Fourth Cause of Action.

"[S]ection 52.1 of the Civil Code guarantees the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state without regard to his or her membership in a protected class identified by its race, color, religion, or sex, among other things." *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 841.  Under §52.1, there does not need to be membership in a protected class.

Under §52.1, there was the clearly threat of arrest on October 30, 2018, in violation of plaintiffs' constitutional rights under the 1st, 6th amendments and 14th amendments.  An unlawful arrest is a false imprisonment, with all the attendant violence and threats of violence inherent in a false imprisonment threatened  by men armed with lethal firearms.  African Americans are well aware that even simple  or even innocent interactions can lead to the death of African Americans when confronted by armed police or sheriff.  Section 52.1 provides a civil remedy to the harms alleged by plaintiffs, and that is the basis of the Fifth Cause of Action.

When defendants complain that Plaintiffs' allegations of fear for their safety knowing that "unarmed black and brown young men have been shot and killed by Sheriff's deputies" are "vague" and "unreasonable", that is the gravamen of the issue.  African American people are killed by police and sheriffs, all across this country, at alarming rates.  Three of the plaintiffs, Smith-Downs, Friday and Brown have had a beloved family member shot and killed by police.  Far from being unreasonable, plaintiffs' personal experiences are not just that for African Americans, the death penalty, unfortunately, regularly results from interactions with police and sheriff.

Defendants motion should be overruled.

10.     **PLAINTIFFS NEGLIGENCE CLAIM HAS BEEN PROPERLY PLED**

In its final argument, defendants again reiterate that they do not know what duty Plaintiffs claim defendants owed.

Perhaps it is true, and a mystery at that, that defendants do not "get" the wrongfulness of their actions, and do not understand the clear and unmistakable stench of racism which pervades them.  It is unclear how much more succinctly and how many more times plaintiffs need to reiterate the fact that defendants had a duty not to abuse their police powers.  Defendants had a duty not to interference or prevent plaintiffs' exercise of their constitutional rights.  And clearly, defendants breached that duty when they barred plaintiffs' entrance into a public courthouse, and harassed and threatened

plaintiffs inside that courthouse with arrest if they did not leave. Perhaps, in the face of what appears to be blatant racism, deflection and denial is the only defense, and that is why conflicts such as this one need to be presented to the jury.

### 11. CONCLUSION

The purpose behind Fed. R. Civ. P. §12(b)(6) is to "test the legal sufficiency of the claims asserted in the complaint." Fed. R. Civ. P. §8(a)(2) requires only that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Potter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).

Motions to dismiss are generally "regarded with disfavor and [are] rarely granted without leave to amend." *Kaufman & Broad-South Bay v. Unisys Corp.*, 822 F.Supp. 1468, 1472 (N.D. Cal. 1993), *disapproved of on other grounds in KFC Western, Inc. v. Meghrig*, 49 F.3d 518 (9th Cir. 1995), *citing Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274, *cert. den.* 485 U.S. 940 (1988); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003),(Rule 12(b)(6) embodies "a powerful presumption against rejecting pleadings for failure to state a claim.")

In ruling on a motion to dismiss, all allegations of material fact are accepted as true and should be construed "in the light most favorable to the plaintiff." *Perfect 10, Inc. v. Visa Inter'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007) (internal quotation marks omitted). Ambiguity must also be resolved in Plaintiffs' favor. *Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir. 1973).

The court must also determine whether plaintiff can prove *any set of facts* to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir.1996). "A complaint should not be dismissed unless it appears *beyond doubt* the plaintiff can prove *no set of facts* in support of his claim that would entitle him to relief." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

Furthermore, leave to amend is freely given unless the opposing party makes a showing of undue prejudice, or bad faith or dilatory motive on the part of the moving party. *Foman v. Davis* (1962) 371 U.S. 178, 182; *Martinez v. Newport Beach City* (9th Cir. 1997) 125 F.3d 777, 785. Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (*citing Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)).

Plaintiffs request that defendants' motion to dismiss be overruled. But if the court were to sustain any portion of defendants' motion to dismiss, plaintiffs, in light of the very serious, and

important social issues at risk, request leave to amend.

Respectfully submitted,

Dated: November 23, 2018

_/s/ Yolanda Huang_____
By: YOLANDA HUANG
Attorney for Plaintiffs

**OPPOSITION TO DEFENDANTS MOTION TO DISMISS**
*BLM-Stockton Chapter v. San Joaquin County Sheriff's Office*, US District Court, Eastern District of California, Case No. 2:18-cv-00591-KJM-AC