1  GREGORY B. THOMAS, ESQ. (SBN 239870)
   TEMITAYO O. PETERS, ESQ. (SBN 309913)
2  BOORNAZIAN, JENSEN & GARTHE
   A Professional Corporation
3  555 12th Street, Suite 1800
   Oakland, CA 94607
4  Telephone: (510) 834-4350
   Facsimile: (510) 839-1897
5  gthomas@bjg.com
   opeters@bjg.com
6
   Attorneys for Defendants SAN JOAQUIN COUNTY, STEVE
7  MOORE, DAVE OLIVER, JOE PETRINO

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10 BLACK LIVES MATTER-STOCKTON      )   Case No. 2:18-cv-00591-KJM-AC
   CHAPTER, et al.,                 )
11                                  )   **REPLY IN SUPPORT OF DEFENDANTS'**
                                    )   **MOTION TO DISMISS PLAINTIFFS' FIRST**
12          Plaintiffs,             )   **AMENDED COMPLAINT**
   v.                               )
13                                  )
   SAN JOAQUIN COUNTY SHERIFF'S     )   **DATE:** December 7, 2018
14 OFFICE, et al.,                  )   **TIME:** 10:00 a.m.
                                    )   **COURTROOM:** 3
15          Defendants.            )   **JUDGE:** Honorable Judge Kimberly Mueller
   _____)   First Amended Complaint filed March 20, 2018

16                      **I.    INTRODUCTION**

17         The factual allegations in this matter are based on two incidents that occurred at the San

18 Joaquin County Courthouse located in Stockton ("Courthouse").  In sum, on October 30, 2017,

19 Plaintiff Black Lives Matter-Stockton Chapter ("BLM") allegedly organized a "court support"

20 event at the Courthouse for several members who had criminal hearings, including Plaintiffs

21 Marbley and Brown.  ECF No. 16 ("FAC") ¶¶ 33, 39.  Plaintiffs allege that on the subject morning,

22 a "phalanx" of San Joaquin County Sheriff's Office ("SJCSO") officers, including Defendants

23 Steve Oliver and Joe Petrino, stopped and questioned "individuals who were brown or black" and

24 then denied entrance to anyone they "identified as having participated in previous" BLM events or

25 had clothing that contained the words "black lives matter," all of whom were "individuals of color."

26 *Id.* at ¶ 43.  They further allege that the officers "barred Claimants' entry into the building" even

27 though "Claimants were doing nothing more than walking toward the courthouse and seeking entry,

28 in the same manner as every other individual who approached the building." *Id.*  Subsequently, on

-1-

January 31, 2018, Plaintiffs allege that unnamed defendants made several BLM members, including Plaintiffs Friday and Brown, feel "uncomfortable and nervous" after another BLM-arranged "court support" event. *Id.* at ¶ 44. They allege that these defendants "broadcast[ed] a clear hostility in their demeanor" by following the members as they were walking down a Courthouse hallway, engaging in "menacing and threatening conduct," "verbally insulted" them, stated that they "had no business at the courthouse and instructed them to leave." *Id.* at ¶¶ 44-45.

Plaintiffs' FAC goes far beyond the alleged October 30, 2017 and January 31, 2018 incidents ("Subject Incidents") to justify their attempt to impose liability in this matter by weaving in unrelated allegations. *See Id.* at ¶¶ 29-36, 40. When all of these speculative and conclusory allegations are set aside, however, a plain reading demonstrates that Plaintiffs' claims are inadequate as pled and many fail as a matter of law, even when the FAC is construed in the light most favorable to Plaintiffs. Therefore, Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiffs' FAC in full. ECF No. 17 ("Motion").

## II.   LEGAL ARGUMENT

**A.   Plaintiffs' Federal Claims Should be Dismissed.**

Based on the Subject Incidents, Plaintiffs assert First, Fifth, Sixth and Fourteenth Amendments claims under 42 U.S.C. § 1983.

### 1.   Defendants are Entitled to Eleventh Amendment Immunity.

Although local government officials are generally not afforded Eleventh Amendment immunity, the Supreme Court has held that they are entitled to this immunity when they are acting "as state agents with final policymaking authority over the complained-of actions." *McMillian v. Monroe County*, 520 U.S. 781, 783-84 (1997). Thus, courts look to state law when determining whether Eleventh Amendment immunity is appropriate in a local government context. *Id.* at 785-86. Plaintiffs' Opposition distinguishes two unpublished cases Defendants cite in support of their request for immunity in this action because one case was decided before the California legislature amended the statutory provisions governing superior court security, and the other involved court security action conducted under a direct judicial order. ECF No. 26 ("Oppo.") at 3-4.

As Plaintiffs correctly point out, the California legislature amended the statutes governing

superior court security with the "Superior Court Security Act of 2012" ("Act").  Cal. Gov. Code § 69920; Oppo. at 4.  Consistent with this amendment, county sheriffs' departments provide court security functions, subject to certain limitations, as established by memorandums of understanding.  Cal. Gov. Code §§ 69921.5-69923, 69926.  Pursuant to the Act, the SJCSO contributes to San Joaquin County court operations by providing court security services.  Cal. Gov. Code §§ 74820; 74820.2; 77003.  While Defendants concede that California Government Code section 77200, which they cited in their Motion as tasking the state with the sole responsibility for funding court operations has been repealed, court security services provided by sheriffs' departments can still be funded by superior courts under the Act.  *Compare* Motion at 7:6-7 *with* Cal. Gov. Code § 69923.

While many of the statutes the *Rojas* court relied upon to justify granting the defendant deputy immunity in his official capacity for providing court security services have since been repealed, the same principles still apply under the new Act:  (1) California courts still fund court security services defined by the Act ; (2) court security services formally provided by marshals may still be provided by local sheriffs' departments, such as the SJCSO; and (3) court security, such as monitoring court hallways and facilities, is still defined within the definition of "court operations."  *Compare Rojas v. Sonoma County*, 2011 U.S. Dist. LEXIS 122276, *8-12 (N.D. Cal. 2011) *with* Cal. Gov. Code §§ 69922(b)(3), 69923, 74820.1-748020.2 and 77003.  Contrary to Plaintiffs' assertions, since the Act was passed, at least one other district court has followed the *Rojas* court's example and granted a deputy sheriff Eleventh Amendment immunity for claims that arose while he was providing court security services absent a direct judicial order.  *See Hirmanek v. Clark*, 2014 U.S. Dist. LEXIS 84621, *15 (N.D. Cal. 2014).  In light of this fact and since Plaintiffs appear to admit that defendants were providing court security services as defined by California law when the Subject Incidents occurred, Defendants respectfully request that the Court grant all defendants Eleventh Amendment immunity from Plaintiffs' federal claims.  *See* FAC ¶¶ 48-49.

### 2.   The FAC is too Vague to Impose Supervisory or Municipal Liability.

Before addressing the sufficiency of Plaintiffs' municipal and supervisory allegations, Defendants note that the FAC is unclear as to whether Defendants Petrino and Oliver are being sued in their official capacities, individual capacities or both, and Plaintiffs' Opposition makes no effort

1  to clarify this ambiguity.  The Supreme Court has held that "[o]fficial capacity suits are generally

2  another way of pleading an action against an entity of which the officer is an agent," making an

3  officer a redundant defendant when the local government entity is also named in a lawsuit.  *Luke v.*

4  *Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citations omitted).  *See also MacFarland v. City of*

5  *Clovis*, 163 F.Supp.3d 798, 808 (E.D. Cal. 2016).  Here, since there is no meaningful distinction

6  between Plaintiffs' claims against San Joaquin County ("County"), Defendant Moore – who is

7  being sued in his official capacity only – and Defendants Petrino and Oliver in their official

8  capacities, the individual claims are redundant, and dismissal with prejudice is proper.  Plaintiffs do

9  not oppose this argument in their Opposition.

10  Plaintiffs' federal claims against Defendants Moore, Petrino and Oliver should also be

11  dismissed because the FAC is too vague to impose supervisory liability.  Supervisory liability may

12  only be imposed when either:  (1) a defendant was personally involved in the constitutional

13  deprivation caused; or (2) there is a "sufficient causal connection between the supervisor's wrongful

14  conduct and the constitutional violation."  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  *See*

15  *also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (". . . Government officials may not be held liable

16  for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").  In

17  their Opposition, Plaintiffs appear to argue that supervisory liability should be imposed upon

18  Defendant Moore via the latter avenue because he has "developed a policy of protecting police

19  officers including Sheriff deputies from accusations of wrong doing and use of excessive force..."

20  such as by ongoing "interference with pathology findings in coroner's reports."  Oppo. at 7.  They

21  further argue that implementation of this "policy" manifests in "hostility towards those who

22  criticize[d] the police and sheriff," such as Plaintiffs.  *Id*.

23  Here, there is no affirmative link between Plaintiffs' allegations about Sheriff Moore's

24  alleged conduct and the constitutional deprivations they allegedly endured.  For example, the FAC

25  does not specifically allege that Sheriff Moore interfered with pathology findings somehow related

26  to the arrests that led to the criminal proceedings they were providing "court support" for during the

27  Subject Incidents, or that the arrests are related to Sheriff Moore's alleged desire to protect the

28  SJCSO from "accusations of wrong doing" or "excessive force."  *Cf*. FAC at ¶¶19-20.  It also does

1  not specifically allege that "excessive force" was used at any point during the Subject Incidents or

2  that any defendant acted under Sheriff Moore's direction specifically to insulate members of the

3  SJCSO from "accusations of wrong doing" or to protect untruthful pathology findings.

4          While one of Plaintiff BLM's purposes may be to challenge the conduct they allege Sheriff

5  Moore has engaged in to protect the SJCSO, the FAC simply does not plausibly allege a rational,

6  non-conclusory link between his alleged conduct and the specific actions that led to the specific

7  constitutional deprivations Plaintiffs' allegedly endured during the Subject Incidents, particularly

8  since Plaintiffs allege that they are "informed and believe" that the deputy sheriffs' presence at the

9  Courthouse was at the request of Judge Garber.  *Id.* at 48.  *See also Iqbal*, 556 U.S. at 678.  Thus,

10  Plaintiffs' allegation that Sheriff Moore is "the ultimate power and authority" for SJCSO's policies,

11  directives and practices is merely an improper *respondeat superior* attempt.

12          As for Defendants Petrino and Oliver, the parties do not dispute that Plaintiffs specifically

13  plead that they were personally present during the October 30, 2017 incident, which is sufficient at

14  the pleading stage under *Starr*.[1]  The parties disagree, however, as to whether Plaintiffs' allegations

15  are sufficient to justify imposing supervisory liability upon Defendants Petrino and Oliver for the

16  January 29, 2018 incident.  Plaintiffs argue that the Subject Incidents "are a two-step, and not

17  separated incidents" and that "[s]ince defendants [sic] have alleged that the actions taken are part

18  and parcel of an overarching unconstitutional policy by the Sheriff's Office," they should be

19  excused from specifically pleading that Defendants Petrino and Oliver were personally present on

20  January 29, 2018 due to "lack of specific information at the time of the filing of the FAC."  Oppo.

21  at 6.  Without specific factual allegations linking Defendants Petrino and Oliver for the January 29,

22  2018 incident, this argument is nothing more than an effort to contravene the plausibility standard

23  required under *Iqbal* at the pleading stage to improperly impose *respondeat superior* liability.

24          Finally, one of the ways a plaintiff can justify imposing municipal liability is by alleging

25  that an "action pursuant to an official municipal policy or custom caused their injury.  Official

26  municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking

27
28
---
[1]  Plaintiffs suggest that since Defendants do not seek dismissal for the October 30, 2017 incident, they "are not challenging the allegations that Petrino and Oliver are supervisory and command officers..." Oppo. at 6.  Defendants expressly refute and deny that they have made any such admission at this stage of the proceedings.

officials, and practices so persistent and widespread as to practically have the force of law."

*Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted).  Although Plaintiffs' Opposition

does not specifically address Defendants' argument that municipal liability is improper due to the

vagueness of their allegations, they appear to clarify that their attempt to impose municipal liability

is based on their allegation that the Subject Incidents are not "separate and isolated incidents[, but]

rather a continuation of a formal policy" perpetrated by Sheriff Moore's alleged "policy of

protecting police officers . . ." Oppo. at 7-8.  As addressed in detail above, however, nothing in

Plaintiffs' FAC establishes a sufficient causal connection between Sheriff Moore's alleged "policy"

and the constitutional deprivations Plaintiffs allegedly suffered during the Subject Incidents.  And

even if there were some causal link between these allegations, Plaintiffs' allegations are insufficient

to establish that Sheriff Moore's alleged "policy" is representative of a specific County-wide,

constitutionally-deficient policy or that the conduct alleged in their FAC is part of a persistent,

widespread and ongoing practice of perpetuating the specific constitutional deprivations they allege

here, as required under *Iqbal* at the pleading stage.  *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.

1996).  *See also Huling v. City of Banos*, 869 F.Supp.2d 1139, 1156-58 (E.D. Cal. 2012).

Ultimately, Plaintiffs' repeated failure to allege sufficient facts to impose municipal and

supervisory liability upon Defendants suggests that they cannot cure the deficiencies that caused the

Court to originally dismiss Plaintiffs' federal claims against them for failure to sufficiently plead

municipal and supervisory liability.  *See* ECF No. 15 at 7.  As a result, Defendants respectfully

request that these claims be dismissed with prejudice.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### 3.   Plaintiffs' Federal Claims Fail to State a Valid Cause of Action.
#### a.   Plaintiffs' First Amendment Claim Fails because Plaintiffs do not Allege that they were Expressing a Collective Point.

Plaintiffs' federal claims should also be dismissed for failure to state a valid claim for relief.

First, the parties disagree as to whether Plaintiffs adequately plead an exercise of the right to free

speech.  Plaintiffs argue that Defendants specifically prevented them from entering the Courthouse

on October 30, 2017 because they were wearing "BLM jewelry, insignia and t-shirts."  Oppo. at 9.

Although the FAC is ambiguous as to whether Plaintiffs are asserting a First Amendment claim

related to the January 29, 2018 incident, Plaintiffs' Opposition argues that unnamed defendants

-6-

1   specifically "harass[ed] and threaten[ed]" them on this date for wearing these same items.  *Id*.  But

2   Plaintiffs' FAC does not specifically allege that any Plaintiffs were wearing "BLM jewelry, insignia

3   and t-shirts" during the January 29, 2018 incident or that unnamed deputies harassed or threatened

4   them for wearing these items on this date.  *See generally*, FAC; Motion at 10-12.

5          Plaintiffs also argue that "speech" includes various forms of "expressive conduct," such as

6   "an association that seeks to transmit a system of values."  Oppo. at 9.  While Plaintiffs allege that

7   some BLM members were denied access to the Courthouse specifically because they were wearing

8   BLM-identifying jewelry and clothing on October 30, 2017, they also allege that these members

9   were "doing nothing more than walking toward the courthouse and seeking entry, in the same in the

10  same manner as every other individual who approached the building" when their access was denied.

11  FAC at ¶ 43.  Plaintiffs do not specifically allege that they were told to remove their BLM-

12  identifying clothing on this date or seeking entry into the Courthouse specifically to provide "court

13  support," if this can be said to qualify as "expressive conduct," when they were allegedly barred

14  entry.  ECF No. 15 at 4.  Nor do they allege that they were forced to endure any other conduct that

15  could be said to impede upon an attempt to engage in the type of "expressive conduct" protected by

16  the First Amendment on either of the subject dates.  Thus, even if Plaintiff BLM organized "court

17  support" on both of the subject dates for its members who had hearings at the Courthouse,

18  Plaintiffs' FAC still does not contain sufficient facts for the Court to reasonably conclude that any

19  First Amendment rights were violated during the Subject Incident.  *Iqbal*, 556 U.S. at 678.  Thus,

20  dismissal of Plaintiffs' First Amendment claim with prejudice is proper.  *Foman*, 371 U.S. at 182.

21              **b.      Plaintiffs' Sixth Amendment Claim Fails because the "Public-Trial
                          Guarantee" does not Extend to the Public and the FAC Does not
22                        Sufficiently Allege Any Closed Court Proceeding.**

23         Second, the Parties disagree as to whether Plaintiffs' allegations establish a valid Sixth

24  Amendment violation.  While Plaintiffs' FAC does not clearly identify which Plaintiff(s) are

25  attempting to assert this claim, their Opposition clarifies that this claim is being asserted by each

26  Plaintiff.  They argue that those of them who were not criminal defendants have a right to attend

27  public trials under the Sixth Amendment.  Oppo. at 10.  Although the Supreme Court has

28  recognized that the Sixth Amendment's right to a public trial belongs to a criminal defendant, it has

-7-

1  stated that this right does not belong to the public, particularly at the pretrial stage. *Gannett Co. v.*

2  *DePasquale*, 443 U.S. 368, 379, 387-90 (1979). *But see Richmond Newspapers v. Va.*, 448 U.S.

3  555, 581 (1980) (finding a public right to attend trials under the First and Fourteenth Amendments).

4        Plaintiffs also argue that Plaintiffs Brown and Marbley's Sixth Amendment rights were

5  violated because their court supporters were denied access to their criminal hearings on the subject

6  dates. Oppo. at 10-11. In doing so, Plaintiffs fail to allege that all or most members of the public

7  were barred access to their October 29, 2017 hearing. Instead, Plaintiffs specifically allege that

8  only people identified as BLM members or wearing BLM-identifying jewelry or clothing were

9  denied access to hearing, all of whom were "individuals of color." *Id.* at ¶ 43. This allegation does

10  not reasonably suggest that any "non-color" BLM members or other members of the public were

11  also denied access to the hearings in a manner that would violate Plaintiffs Brown and Marbley's

12  Sixth Amendment rights. *See Gannett*, 443 U.S. at 389. Contrary to Plaintiffs' assertions,

13  Defendants' request for judicial notice of newspaper articles that were in the public realm at the

14  time of both hearings is not an effort to create a factual dispute. *Compare* Oppo. at 11 *with* ECF

15  No. 18 *and* 18-1. Instead, Defendants introduced the articles as matters of public record to support

16  their argument that Plaintiffs' allegations of limited closure fail as a matter of law in light of

17  Plaintiffs' allegation that Judge Garber may have requested extra deputy presence at the Courthouse

18  on both dates. FAC ¶ 48. *See also* Motion at 12-13. Therefore, Defendants respectfully request

19  that Plaintiffs' Sixth Amendment claim be dismissed with prejudice.

20        **c.**    **Plaintiffs' Equal Protection Claim is Waived and their Allegations do not give Rise to a Valid Due Process Claim.**

21

22        Third, although Plaintiffs go to great lengths to clarify that their Fourteenth Amendment

23  claim is based on the fact that Plaintiffs were discriminated against during the Subject Incidents on

24  the basis of both their race and membership in Plaintiff BLM, they fail to respond to Defendants'

25  argument that they waived their equal protection claim by failing to replead it in their FAC.

26  *Compare* Oppo. at 11-12 *with* Motion at 14. Plaintiffs do, however, clarify that their substantive

27  due process claim, which replaced their original equal protection claim in the FAC, is based on

28  Defendants' alleged interference with their life and liberty rights. Oppo. at 13.

Notwithstanding this clarification, Plaintiffs' due process claim as alleged in the FAC remains impermissibly vague and does not satisfy the plausibility standard required under *Iqbal*.  It does not allege that any federal action contributed to the constitutional deprivations they allege.  *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).  It also does not clearly indicate whether Plaintiffs' Fourteenth Amendment claim is based on a procedural or substantive due process claim.  Using Plaintiffs' Opposition to clarify the ambiguity of the FAC does not save this claim since Plaintiffs' allegations suggest that the conduct they were allegedly subjected to during the Subject Incidents was "arbitrary or irrational."  *Del Monte Dunes v. Monterey*, 920 F.2d 1496 (9th Cir. 1990).  Instead, Plaintiffs appear to allege the exact opposite.  *See* FAC at ¶ 48.  Moreover, even considering Plaintiffs' argument that an arrest causes African Americans a "threat to life," the FAC does not reasonably suggest that any Plaintiff was personally subjected to a legitimate and unconstitutional threat to life or liberty during either of the Subject Incidents.  Therefore, Defendants respectfully request that Plaintiffs be barred from their attempt to reassert their dropped equal protection claim, that any claims under the Fifth Amendment be dismissed with prejudice and that Plaintiffs' clarified due process claim be dismissed with prejudice unless Plaintiffs represent that they can resolve the deficiencies outlined above.

**B.     Plaintiffs' State Claims Fail to State a Valid Cause of Action.**

Plaintiffs also assert a negligence claim and claims under the California Civil Code § 51.7 ("Ralph Act") and California Civil Code § 52.1 ("Bane Act") based on the Subject Incidents.

**1.     Plaintiffs' Ralph and Bane Act Claims Fail because they do not Allege Violence.**

Plaintiffs' claims under the Ralph and Bane Acts suffer from a significant deficiency.  A properly pled Ralph Act claim alleges sufficient facts that demonstrate a defendant threatened or committed violent acts against a plaintiff.  *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 880 (2007).  Similarly, a properly pled Bane Act claim alleges that a defendant attempted to interfere with a plaintiff's constitutional rights by threatening or committing violent acts.  *Id*. at 882.  In their Opposition, Plaintiffs reference several publicized deaths of African-American males and then argue that Defendants' actions were motivated by race and essentially that a threat of violence is inherent in all interactions that African-Americans have with law

enforcement.  Oppo. at 14.  Even if this conclusory allegation is taken as truth, the FAC fails to specifically allege that any defendant personally engaged in violent conduct or threatened to commit actual violent acts, such as by threatening to use excessive force, against any Plaintiff.  In the absence of specific allegations of actual violence or threats of violence during the Subject Incidents, Plaintiffs have not properly alleged a valid Ralph or Bane Act claim.  *See* Motion at 15-17.  Thus, even if the Court were to accept all of the arguments Plaintiffs make in their Opposition, these claims still fail as pled in the FAC and should be dismissed.

### 2.    Plaintiffs' Negligence Claim Fails because their Federal Claims Fail.

Finally, to properly plead a claim for negligence, Plaintiffs must plead that Defendants "had a duty to use due care, that [they] breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego*, 57 Cal.4th 622, 629 (2013).  Instead of responding to Defendants' argument that this claim is impermissibly vague, Plaintiffs query how Defendants can fail to understand that they owe a "duty not to interference [sic] or prevent plaintiffs' exercise of their constitutional rights" and "the clear and unmistakable stench of racism that pervades them."  Oppo. at 14.  Defendants deny and specifically refute this accusation.  They also argue that Plaintiffs did not suffer any constitutional deprivations for the reasons stated above. In light of the repeated failure of Plaintiffs' federal claims, Defendants doubt that Plaintiffs can properly amend this claim and respectfully request that this claim be dismissed with prejudice.

### C.    Defendants' Request for Judicial Notice of Matters of Public Record is Proper.

In closing, contrary to Plaintiffs' assertions, the referenced newspaper articles were properly attached to Defendants' Request for Judicial Notice ("RJN").  *See* ECF No. 18-1 at 3-11.  These newspaper articles are not hearsay because Defendants do not ask the Court take judicial notice of them for the truth of the matter asserted, but rather as evidence of the information that was in the public record at the time of the Subject Incidents for the reasons stated above and in more detail in Defendants' RJN and Motion.  *See generally* Motion *and* ECF No. 18.  *See also Von Saher v. Norton Sion Museum of Art at Pasadena*, 578 F.3d 1016, 1022 (9th Cir. 2009).  Defendants therefore respectfully request that the Court deny Plaintiffs' objections, take judicial notice of the newspaper articles referenced in their RJN as matters of public record and grant their Motion in full.

1  DATED:  November 30, 2018              BOORNAZIAN, JENSEN & GARTHE
                                          A Professional Corporation
2

3                                         By: /s/ GREGORY B. THOMAS, ESQ.
                                              GREGORY B. THOMAS, ESQ.
4                                             TEMITAYO O. PETERS, ESQ.
                                          Attorneys for Defendants SAN JOAQUIN
5                                         COUNTY, STEVE MOORE, DAVE OLIVER,
                                                   JOE PETRINO
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFTS' MOTION TO DISMISS COMPLAINT – Case No. 2:18-CV-00591-KJM-AC